IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-vs-

TIMOTHY JACKSON, JR. a/k/a T
a/k/a T-Rock,
GARY FULLER a/k/a G,

Defendants.

25-CR-6083FPG(H)

**GOVERNMENT'S RESPONSE
TO DEFENDANTS'
PRETRIAL MOTIONS**

The United States of America, through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, Robert A. Marangola, Assistant United States Attorney, of counsel, does hereby make and file its consolidated response to the pretrial motions of defendants Timothy Jackson (Dkt. 240) and Gary Fuller (Dkt. 241).

Dated: Rochester, New York, September 29, 2025.

MICHAEL DIGIACOMO
United States Attorney

*/s/Robert A. Marangola*

BY:    ROBERT A. MARANGOLA
Assistant United States Attorney
100 State Street, Room 500
Rochester, New York 14614
Phone: (585) 399-3980
Robert.Marangola@usdoj.gov

TO: Defense counsel

**INDEX**

SEVERANCE..................................................................................................4

    Severance of Felon in Possession Charge (Count 3) ................................4

    Severance from Co-Defendant Fuller...................................................5

        A. Applicable Law ...............................................................6

        B. Discussion ......................................................................8

CONSTITUTIONALITY OF SECTION 922(g)(1) ....................................9

SUPPRESSION OF EVIDENCE.................................................................10

    Standing ...............................................................................................10

        1.  Jackson has established standing to challenge only the search of 45 Willmont Street and the 2005 Ford F-150...............................11

        2.  Fuller has established standing to challenge only the search of 86 Forester Street.........................................................................12

    Probable Cause ...................................................................................13

        Applicable Law....................................................................14

        Discussion ..........................................................................15

            1.  45 Willmont Street and 86 Forester Street......................15

            2.  GPS Tracker on 2000 Acura..........................................21

    *Franks* Hearing....................................................................................23

        Applicable Law....................................................................23

        Discussion ..........................................................................24

    Particularity Requirement ...................................................................27

        Applicable Law....................................................................27

        Discussion ..........................................................................27

Good Faith Doctrine ........................................................................28

SUPPRESSION OF STATEMENTS .......................................................29

Jackson ........................................................................................29

Fuller ...........................................................................................30

DISCLOSURE OF CONFIDENTIAL INFORMANT IDENTITIES ............31

EARLY PRODUCTION OF JENCKS ACT MATERIAL ...............................33

FED.R.EVID. 404(b), 608 & 609 DISCLOSURE ............................34

GIGLIO/BRADY/COPPA ......................................................................35

DISCOVERY ........................................................................................36

Expert Disclosure/Notice ..............................................................36

Government's Discovery Demand ...................................................37

BILL OF PARTICULARS ......................................................................38

Applicable Law .............................................................................38

Discussion ....................................................................................41

PRESERVATION OF ROUGH NOTES ....................................................44

LAW ENFORCEMENT PERSONNEL FILES ............................................44

PRECLUSION OF IDENTIFICATION TESTIMONY ..................................44

Applicable Law .............................................................................45

Discussion ....................................................................................46

AUDIBILITY HEARING .......................................................................46

CO-DEFENDANT MOTIONS AND FURTHER MOTIONS.........................47

## SEVERANCE

Jackson seeks severance of Count 3 from the other charges in the indictment, as well as severance of his trial from co-defendant Gary Fuller, who also seeks a separate trial. These motions, addressed separately below, should be denied, as the felon in possession charge relates to the other charges in the indictment, and neither Jackson nor Fuller has overcome the strong presumption in favor of a joint trial.

### Severance of Felon in Possession Charge (Count 3)

Jackson seeks severance of Count 3 "in the interest of justice and the interest of a fair trial for the defendant, without consideration of irrelevant or otherwise prejudicial matters." (Dkt. 240-1, p.4).

Count 3 charges Jackson with being a felon in possession of a 9mm pistol and ammunition that were found during the execution of a search warrant on January 17, 2024 at his residence at 45 Willmont Street in the City of Rochester. At that location, officers also recovered narcotics packaging material, cash utilized in a controlled purchase of cocaine, and keys to the drug houses on Angle Street operated by Jackson and Fuller. Jackson is charged with narcotics conspiracy as well as possessing a firearm in furtherance of a drug trafficking crime. It will be alleged that the defendant possessed the 9mm pistol, as well as other firearms, in furtherance of the narcotics conspiracy.

Since evidence of firearms possession is admissible in a narcotics trial, particularly where, as here, narcotics evidence and firearms evidence are found during the same search, a 922(g)(1) charge is properly joined in the indictment based on the logical connection of that charge to the other indicted offenses. *See United States v. Page*, 657 F.3d 126, 130 (2d Cir.

4

2011) (sufficient logical connection between narcotics and felon in possession of firearm count justifying joinder and denial of severance where evidence was found as part of the same search). The government does not oppose *bifurcation* of the 922(g)(1) count, consistent with the practice in this district when trying felon in possession charges as part of a multi-count indictment. As the Second Circuit stated in *Page*,

> We reject Page's contention that a felon-in-possession charge must *always* be severed from other charges. *Jones* does not stand for that proposition. Rather, we hold that where, as here, there is a logical connection between the felon-in-possession count and the other charges, there is a similarity in the evidence necessary to prove the different charges, the trial court takes steps to limit the danger of prejudice and gives a proper limiting instruction, and the defendant is not substantially or unfairly prejudiced, a district court may exercise its sound discretion in denying a motion to sever a felon-in-possession count from other charges for trial. Nothing in this opinion should be taken to be a denunciation of the practice of bifurcating a felon-in-possession charge from other charges in a single multi-charge trial where doing so would better protect the defendant from prejudice than a limiting instruction, and the district court determines that a limiting instruction cannot adequately protect the defendant from substantial prejudice and bifurcating the trial of that charge would provide such protection.

*United States v. Page*, 657 F.3d 126, 132 (2d Cir. 2011).

Accordingly, the defendant's motion to sever Count 3 should be denied.

## Severance from Co-Defendant Fuller

Jackson and Fuller ask the Court to give them separate trials. (Dkt. 240-1, pp.4-5; Dkt. 241, pp.22-23). However, since there is no basis in law or fact for ordering separate trial for these two jointly charged co-conspirators, their motions for severance should be denied.

A. **Applicable Law**

An indictment may charge jointly two defendants where they "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (joint trials are preferred "[f]or reasons of economy, convenience and avoidance of delay"). Where "the defendants are alleged to have participated in a common plan or scheme," that preference is "particularly strong." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998). "Even with proper joinder under Rule 8, Rule 14 provides that a district court may nonetheless grant a severance of defendants' joint trial '[i]f it appears that a defendant or the government is prejudiced by a joinder.' Fed.R.Crim.P. 14(a)." Feyrer, 333 F.3d at 114. However, "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993).

In light of the clear preference for joint trials, "a severance, pursuant to Fed R.Crim. P. 14, should only be granted if there is a serious risk that a joint trial would either compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir 1998), citing *Zafiro v. United States*, 506 U.S. at 539. That is, a defendant seeking a separate trial must establish that the prejudice he would suffer from a joint trial is "sufficiently severe to outweigh the judicial economy" of multiple trials. *Id.*, citing *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir.1984).

"'Prejudice' occurs in joint trials when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper." *United States v. Salameh*, 152 F.3d at 115. This is often referred to as "so-called spillover prejudice." *United States v. Dinome*, 954 F.2d 839, 842 (2d Cir. 1992). "A defendant raising a claim of prejudicial spillover bears an extremely heavy burden." *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988). A valid spillover prejudice claim in a federal conspiracy trial is "unlikely . . . when all of the defendants are charged under the same conspiracy count." *Salameh*, 152 F.3d at 115. This is due to the nature of the federal conspiracy law. "Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993); *see also Salameh*, 152 F.3d at 115 ("A defendant's claim that he was prejudiced by the admission of evidence at a joint conspiracy trial is insupportable when the evidence would have been admissible against him in a separate trial alone as a member of the conspiracy.").

"Rule 14 does not require severance, even if prejudice is shown. The rule leaves the type of relief granted to the sound discretion of the trial court." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir 1998), citing *Zafiro*, 506 U.S. at 538-39; *see also United States v. Feyrer*, 333 F.3d at 114-115 (noting that "the decision whether to sever under Rule 14 is confided to the sound discretion of the trial court" and is "rarely overturn[ed]"). "Considered virtually unreviewable, a district court's denial of a severance motion under Fed.R.Crim.P. 14 will be reversed only if a defendant can 'show prejudice so severe that his conviction constituted a

miscarriage of justice and that the denial of his motion constituted an abuse of discretion."
*United States v. Diaz*, 176 F.3d 52, 102 (2d Cir. 1999) (citations and inner quotation marks
omitted).

### B. Discussion

Jackson and Fuller should be tried jointly.  They are charged as leaders of a narcotics
conspiracy which involved their joint participation in selling narcotics together from drug
houses on Angle Street.  The proof at trial in this case is estimated to last a number of
months, and there will be significant overlap in the proof against each one of these co-
conspirators, including wiretap recordings involving them with each other and/or other co-
conspirators; surveillance observations and pole camera video footage of them with each
other and/or co-conspirators; search warrant evidence including cocaine, fentanyl, firearms,
and narcotics distribution paraphernalia seized from multiple locations; and numerous
witnesses who will testify to both Jackson and Fuller's leadership and supervision of the
narcotics distribution operation.  Based on the settled law above, and in light of the clear
benefit of judicial economy and the preference in federal court for joint conspiracy trials,
especially in narcotics cases, these co-conspirators should be tried jointly.

The defendants have failed to satisfy their heavy burden to overcome the strong
preference for joint trials. They make only a conclusory claim that severance is justified by
spillover prejudice due to "uncharged acts" of one defendant that they anticipate being
offered to which the other defendant "had no involvement." (Dkt. 240-1, p.4; Dkt 241,
p.22). However, neither defendant identifies any such acts, nor do they articulate how they

would be inadmissible against them, let alone establish how they would be unfairly prejudiced by their admission.

Similarly, their speculation about possible *Bruton* concerns is unfounded. Neither defendant identifies any statements made by the other which raise a confrontation issue with their admission in a joint trial. Regardless, the government does not intend to offer any evidence of post-arrest statements by one defendant that implicate the other defendant, avoiding any potential Confrontation Clause violation as described in *Bruton v. United States*, 391 U.S. 123 (1968).

Neither defendant has demonstrated prejudice, let alone prejudice which is severe enough to outweigh the preference for trying these properly joined co-conspirators together. Even if they had, any "prejudicial spillover" that could result from the admission of the conspiracy evidence at trial would be eliminated by the limiting instruction to the jury that it must assess the evidence against each defendant separately from the evidence against other defendants. *See United States v. Spinelli*, 352 F.3d 48, 55-56 (2d Cir. 2003).

Accordingly, the motions for separate trials should be denied.

## CONSTITUTIONALITY OF SECTION 922(g)(1)

Jackson seeks dismissal of Count 3 on the ground that Section 922(g)(1) violates his constitutional rights under the Second Amendment.[1] (Dkt. 240-1, pp.5-7). The Second Circuit has upheld the constitutionality of Section 922(g)(1) in multiple recent cases. *See*

---

[1] Although Jackson makes a fleeting request for a hearing regarding an alleged Fifth Amendment violation, he fails to articulate any violation or develop this claim in any way. As such, it should be denied.

*United States v. Washington*, No. 23-6664, 2025 WL 1936934 (2d Cir. July 15, 2025); *United States v. Thawney*, No. 22-1399, 2025 WL 1793746 (2d Cir. June 30, 2025); *Zherka v. Bondi*, 140 F.4th 68 (2d Cir. June 9, 2025). Accordingly, this motion should be denied.

## SUPPRESSION OF EVIDENCE

Jackson and Fuller seek suppression of evidence from various search warrants issued in connection with the investigation (Dkt. 240-1, pp.7-13; Dkt. 241, pp.9-15), and attach various search warrants, affidavits, and applications to their motions. Jackson sets forth a laundry list of "issues" he has with various supporting applications without articulating what, if any, legal significance the "issue" presents. *See, e.g.*, Dkt. 240-1, p.8, ¶ F(1) ("No mention is made of the fact that Mr. Jackson was related to Mr. Fuller as cousins."); (4) ("The first reference to Mr. Jackson is at paragraph '39' of the Fuller application where it is noted that the defendant parked at 19 Angle Street on June 6, 2022."); (5) ("The Fuller application references various confidential informants who allegedly had contact with Mr. Fuller[.]"). Jackson fails to specifically connect many of the "issues" to support an argument to suppress evidence from the search warrants. To the extent he does articulate a challenge to a specific application (such as probable cause for 45 Willmont Street), the government addresses it below.

## Standing

It is well-settled that "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). A defendant seeking to have evidence suppressed must establish, by a preponderance of the evidence, a reasonable

expectation of privacy in the location or items searched. *Id.*, at 143; *see also United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) ("The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, a defendant must demonstrate that he personally has an expectation of privacy in the place searched") (internal quotation marks omitted) (emphasis in original); *United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993). "[T]he burden of establishing standing falls squarely on the defendant." *United States v. Hemingway*, 2007 WL 499470 at *9 (W.D.N.Y. Feb. 13, 2007) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)). To satisfy this burden, a defendant must demonstrate an expectation of privacy that is both subjectively and objectively reasonable – that is, the defendant must have a subjective expectation of privacy and that expectation must be one that society deems objectively reasonable. *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997); *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991). "This burden is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge." *Hemingway*, 2007 WL 499470, at *9); *see also United States v. Montgomery*, 2017 WL 9517691, at *8 (W.D.N.Y. July 21, 2017). "Courts in this Circuit have 'repeatedly' denied motions to suppress without a hearing where defendants have failed to provide affidavits alleging facts based on personal knowledge." *United States v. Robinson*, 2017 WL 5135598, at *10 (E.D.N.Y. Nov. 1, 2017) (citations omitted).

### 1. Jackson has established standing to challenge only the search of 45 Willmont Street and the 2005 Ford F-150.

In a Declaration submitted with his motion, Jackson states that "[a]s of January 2024, one of my addresses where I resided was 45 Willmont Street in Rochester, New York.

On or about January 17, 2024, law enforcement arrested me and conducted a search of the residence, including the bedroom where I was staying. Said search included sums of currency, a weapon, ammunition, a cell phone and other property." (Dkt. 240-2, p.1, ¶3). He further states, "Law enforcement also searched my vehicles being a 2005 Ford F-150 and 2017 Chevy Tahoe." (Dkt. 240-2, p.1, ¶5).

The government does not object on standing grounds to Jackson's challenge to the search of his residence at 45 Willmont Street based on his sworn statement that he resided at the location at the time of the search warrant. Nor does the government oppose his standing to challenge the search and/or installation of a tracker on the 2005 Ford F-150 because, as the search warrant affidavit reflects, the vehicle was registered to the defendant. (Dkt. 240-1, p.56, ¶4). However, the 2017 Chevy Tahoe is not registered to the defendant, and he has set forth no factual allegations to demonstrate any legal standing to challenge the search of it, and simply calling it "my vehicle[]" does not satisfy his burden.

Similarly, Jackson failed to articulate a factual basis to establish any standing to challenge the seizure or search of any cell phone. In fact, he has failed to even identify a specific cell phone that he seeks to suppress. Accordingly, since Jackson has not provided a sufficient sworn factual basis to establish standing to challenge the search of the 2017 Chevy Tahoe or any cell phone, the Court should deny those motions summarily.

**2.   Fuller has established standing to challenge only the search of 86 Forester Street.**

The government does not oppose Fuller's standing to challenge the search of 86 Forester Street based on the statements in his affidavit that it was his residence at the time of

his arrest, and that he lived there with his girlfriend. (Dkt. 242-2). However, Fuller's affidavit to obtain standing to challenge the warrant of a 2000 Acura RL is insufficient. It states merely that "I was the driver of a 2000 Acura RL, bearing New York States Registration LDX6111 at the time of my arrest. The vehicle is registered in my girlfriend's name, Kimberly Mendoza. I hereby assert a privacy interest in the vehicle." (Dkt. 242-1, ¶6). As Fuller is not the owner of the vehicle, it is his burden to establish a subjective and objective expectation of privacy in it by other facts, which his affidavit fails to set forth. The fact that the vehicle is registered to his girlfriend by itself is insufficient. At the time of Fuller's arrest, he was in 86 Forester Street, not driving the 2000 Acura. Fuller did not have the keys on his person when he was arrested, and he has not provided sworn facts to establish his use of the vehicle (including the timing and frequency of that use), or the girlfriend's permission for his use. Accordingly, he has failed to carry his burden of establishing either both the legitimate and subjective expectation of privacy on his behalf with respect to the vehicle. His "assert[ion]" of a privacy interest in the vehicle without more is plainly insufficient, and his motion to suppress the evidence from the GPS tracker warrant on the 2000 Acura should be denied for failing to establish standing.

Fuller does not establish standing to move to suppress the results of any other search warrant and, to the extent he makes any, they should be denied on this basis as well.

**Probable Cause**

Jackson contends that the search warrant application for 45 Willmont Street, one of Jackson's residences during the investigation, did not establish probable cause. (Dkt. 240-1, p.12). Fuller also challenges the probable cause for the issuance of the warrant for his residence at 86 Forester Street. (Dkt. 241, p.15). These motions should be denied as

Investigator Minurka's 69-page affidavit, along with the incorporated applications, established more than a substantial basis to authorize search warrants for those residences.

### Applicable Law

Generally, "[a]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008). Whether a search warrant application satisfies the probable cause requirement of the Fourth Amendment requires an evaluation of the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*; *see also United States v. Montgomery*, 2017 WL 3821262 at *2 (W.D.N.Y. Sept. 1, 2017) ("Probable cause 'does not demand certainty but only a fair probability that contraband or evidence of a crime will be found.'" (quoting *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 1984)).

The obligation of the reviewing court is merely to determine that the issuing judge had a "'substantial basis for . . . conclud[ing]' that probable cause existed." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 238-39) (internal quotation omitted). This Court must give "considerable deference to the probable cause determination of the issuing magistrate." *Walcyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007). Put another way, "[r]eviewing courts must give 'due weight to inferences drawn from those facts by resident judges and law enforcement officers,' *United States v. Wilson*, 669 F.3d 235,

242 (2d Cir. 2012) (internal quotation marks and alterations omitted), because 'experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not.'" (quoting *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004). "[R]esolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *Smith*, 9 F.3d at 1012 (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

In evaluating the totality of the circumstances, the court may consider whether the information provided by an informant is corroborated by independent police investigation. *United States v. Canfield*, 212 F.3d 713, 719-20 (2d Cir. 2000). Information provided by a known, reliable confidential informant may be sufficient to establish probable cause, especially where law enforcement agents have corroborated the information. *See McColley v. County of Rensselaer*, 740 F.3d 817, 842 (2d Cir. 2014).

**Discussion**

**1.  45 Willmont Street and 86 Forester Street**

Investigator Minurka's affidavit dated February 7, 2024 (attached hereto as Exhibit A) outlined his extensive training, experience, and background so the reviewing judge had a basis to credit any opinion and interpretation of the investigative information set forth therein. That background, training, and experience included the following:

> Your applicant is a Police Investigator employed by the City of Rochester Police Department, and is presently assigned to the Special Investigations Section, Narcotics Unit. Your affiant has been employed as a Police Officer since August of 2004. During that time, I served in the West Division as a Patrol Officer, the Special Operations Division, Tactical Unit as an officer and investigator, an investigator assigned to Patrol Section Investigations (P.S.I.), an investigator assigned to the Special Investigations

15

Section, Narcotics Unit, and as a member of Special Weapons and Tactics (S.W.A.T.). I have worked in an undercover capacity and purchased narcotics in furtherance of narcotics related investigations. I have attended numerous courses in criminal investigations, and have had the opportunity to conduct, coordinate and or participate in a number of successful investigations involving burglaries, robberies, narcotics, weapons possession, assaults, larcenies and homicides. I have interviewed hundreds of defendants, victims, witnesses and others who have been involved in such crimes. During these investigations, I have had the opportunity to be the affiant on numerous search warrants to include a Title III eavesdropping warrant. These warrants were based on the search for evidence to substantiate various crimes by searching for illicit drugs, clothing, weapons (to include firearms and knives), cellular telephones, computers, and numerous other forms of electronic data collection devices. As a result of this background, I am familiar with the activities of the criminal element within this community and how they tend to operate. I am also familiar with the jargon of narcotics and other illicit drug trafficking and the way narcotics and other illicit drug users and sellers seek to disguise activity relating to drug trafficking.

(Exhibit A, pp.13-14).

Investigator Minurka's affidavit thereafter sets forth extensive details of the investigation into Jackson, Fuller, and the drug trafficking on Angle Street, including the following:

- months of surveillance observations and tracker information connecting

    o Jackson to 45 Willmont Street;

    o Fuller to 85 Forester Street; and

    o Jackson and Fuller to drug houses on Angle Street;

- intercepted phone calls with customers and workers of the drug operation;

- confidential informant purchases from drug houses on Angle Street;

- concerned citizen information about the drug operation on Angle Street; and

- additional information that overwhelmingly reflecting Jackson's and Fuller's involvement in this narcotics operation.

Additionally, the affidavit included Investigator Minurka's opinion about the significance of the observations, meanings of phone calls, etc. In doing so, he also opined about the likelihood of evidence at the residences of these narcotics traffickers:

76.     Based upon my training, experience, participation in the executions of search warrants and other illicit drug trafficking investigations and based upon my conversations with other experienced narcotics officers and agents with whom I am associated, I know:

***

• That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, cashier's checks, correspondence, computer records, and other documents and items related to the manufacture, transportation, ordering, possession, sale and distribution of drugs. These documents and items are often maintained at the suspect' s residence;

• That it is common for drug dealers to secret contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence for ready access and to conceal them from law enforcement authorities;

• That drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their current and past associates in the drug trafficking organization. During search warrant executions I have frequently found notes, books, ledgers, and computer files reflecting names, addresses and other personal identifying information of drug associates;

• That drug traffickers take or cause to be taken photographs or video movies of themselves, their co-conspirators, their property and assets purchased with drug proceeds which are normally kept by drug traffickers in their possession and/or in their residence;

• That drug traffickers commonly have in their possession (on their person or at their residence), ammunition, firearms, including but not limited to, handguns, pistols, revolvers, rifles, shotguns, and other weapons. Said firearms are most often used and/or maintained in order to protect and secure a drug trafficker's person and property;

- That drug traffickers usually keep paraphernalia for packaging, diluting, weighing, manufacturing and distributing their drugs. That paraphernalia includes, but is not limited to scales, plastic bags and diluting agents;

- That drug traffickers often attempt to legitimize their profits from the sale of drugs. To accomplish these goals, drug traffickers utilize, for example, foreign banks, domestic banks, and their attendant services, cashier's checks, money drafts, real estate, and real and fictitious businesses;

- That persons involved in drug trafficking often conceal <u>in their residences</u> quantities of drugs, large amounts of currency, financial instruments, precious metals, jewelry, and other artifacts of value which are the proceeds of drug transactions and evidence of financial transactions, relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities;

- That drug traffickers routinely have methods in place to quickly and efficiently destroy or severely alter contraband to prevent law enforcement from recovering evidence to be used in future court proceedings. I have witnessed occasions where drug traffickers have flushed contraband down toilets, dropped contraband into crock-pots containing hot oil and rinsed contraband down tub drains.

(Exhibit A, pp.63-64).

Investigator Minurka's expertise in combination with his personal observations and participation in the over three-year long investigation of Jackson and Fuller's narcotics operation provided a solid basis for the issuing magistrate to credit his opinion. Collectively, this information provided ample basis for Judge Hahn to issue a warrant for Jackson's residence at 45 Willmont Street and Fuller's residence at 86 Forester Street. *See* Exhibit A, p.18, 20, 34, 36, 41, 53 (describing surveillance observations and/or tracking data of Jackson at 45 Willmont Street); pp.15-16, 18, 21-22, 34, 40-41, 44-46, 50, 52-53 (noting Fuller's residence is 86 Forester Street, and describing surveillance observations of Fuller, as well as Jackson and McClary at the location).

Accordingly, given the affiant's training and experience as set forth in the affidavit, information establishing that 45 Willmont Street was one of Jackson's residences and 86 Forester Street was Fuller's residence (as well as being utilized by Jackson and co-conspirator McClary), there was more than a substantial basis to find probable cause existed that there would be evidence of narcotics trafficking at the locations.

Jackson and Fuller claim the affidavit was insufficient because it did not establish drugs being stored or sold from 45 Willmont Street or 86 Forester Street. (Dkt. 240-1, p.12; Dkt. 241, p.15). However, "[p]robable cause determinations are frequently upheld in situations where a law enforcement officer provides an expert opinion that drug traffickers often maintain evidence of their crimes at their residences[,] ... even in the absence of any specific information connecting suspected drugs to those premises." *United States v. Montgomery*, 2017 WL 3821262, *8 (W.D.N.Y. 2017) (internal quotations and brackets omitted); *see also United States v. Fernandes*, 50 F. Supp. 3d 398, 405 (W.D.N.Y. 2014) ("[i]t is well settled in this Circuit that an agent's expert opinion that his experience taught him that major drug traffickers frequently maintain at their homes evidence of the crime is an important factor in determining whether probable cause exists") (internal quotations and brackets omitted); *United States v. Morgan*, 690 F. Supp. 2d 274, 287 (S.D.N.Y. 2010) ("[a]s the Second Circuit has recognized, a [g]overnment agent's expert opinion is an important factor to be considered by the judge when making a probable cause determination[,] [and] [t]his [c]ourt is entitled to rely on the agent's opinion, as well as the commonsense notion that an individual engaged in a conspiracy may have evidence of that conspiracy, including telephone numbers and other contact information, located in his residence") (internal

quotation omitted); *United States v. Funderburk*, 492 F. Supp. 2d 223, 252 (W.D.N.Y. 2007) ("because the challenged search warrant authorized the executing agents to search not only for quantities of cocaine, but also for books, notes, ledgers, and other documents and records ... at [defendant's] residence[,] ... the court finds the absence of any specific information connecting suspected drugs to [defendant's] residence ... in the agent's supporting affidavit does not invalidate the search warrant"). In other words, probable cause to search a location does not require evidence that criminal activity occurred at the location, especially in the context of narcotics trafficking cases. *See United States v. Milner*, 2024 WL 811965, *3 (D. Conn. 2024) ("there is no requirement of direct observations of drugs, drug records, drug proceeds or drug paraphernalia in the residence"); *United States v. Mouzon*, 2016 WL 7188150, * 5 (S.D.N.Y. 2016) ("[a] showing of nexus between the activities alleged and a suspect's residence does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience") (quoting *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (brackets omitted)).

Investigator Minurka's extensive background and experience, as noted above, also provided a basis for Investigator Minurka to opine about the meaning of coded and/or ambiguous conversations contained in intercepted calls between the defendant and co-conspirators. Although Jackson and Fuller may disagree with the interpretation, it does not defeat the probable cause finding. Even assuming (without accepting) their assertion that it is equally probably that the calls describe innocent activity, suppression is still not warranted. *See United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1995) ("The fact that an innocent explanation may be consistent with the facts as alleged… will not negate probable cause.").  The affidavit reflected that some of the calls between these narcotics trafficking co-

conspirators were coded, a finding which supports probable cause. *United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995) ("We have noted that drug dealers rarely speak openly about their trade, instead they often engage in a so-called narcotics code. Use of such a narcotics code is certainly supportive of a probable cause finding.") (citations and inner quotation marks omitted); *see also United States v. Velasquez*, 271 F.3d 364, 372 (2d Cir. 2001) ("Indeed, we have observed that individuals dealing in cocaine utilize a variety of terms to refer to the illegal substance."). If a law enforcement officer's interpretation of arguably ambiguous or innocent intercepted calls is not unreasonable or implausible, an issuing judge can rely on them in finding probable cause. *United States v. Fury*, 554 F.2d 522, 530-31 (2d Cir. 1977) ("The [recorded] conversations, while somewhat ambiguous at times, can be reasonably interpreted to indicate what the detective interpreted them to be."). Here, the interpretation of calls, based on the training and experience of the investigators, as well as the surveillance observations, was reasonable, and neither defendant has demonstrated otherwise.

### 2.  GPS Tracker on 2000 Acura

Fuller challenges the probable cause in Investigator Christopher Marsherall's application for a GPS tracker installed on the 2000 Acura. (Dkt. 241-1, pp.10-11). Although this motion may be denied because Fuller has failed to establish standing (*see supra*, at pp.12-13), it is also substantively without merit as the issuing magistrate had a substantial basis upon which to issue the warrant. The affidavit included the following:

- numerous controlled purchases by multiple confidential informants of crack cocaine either directly from Fuller at 49 Angle Street, involving Fuller (e.g.,

directing the informant to go to 96 Angle Street to purchase drugs), or where Fuller was present;

- surveillance observations of Fuller operating the 2000 Acura;

- Fuller's presence at drug houses during or near the time of controlled purchases;

- Investigator Marsherall's opinion that Fuller's conduct was consistent with narcotics sales;

- Investigator Marsherall's opinion that a GPS tracker divulging the whereabouts of the 2000 Acura would yield evidence of Jackson and Fuller's drug trafficking, including locations where they store narcotics.

(Dkt. 241-1, pp.6-12).

Collectively, the above information provided Monroe County Court Judge Randall ample basis to issue the GPS tracker warrant. Although Fuller contends that observations of his actions may appear to be innocent, the issuing magistrate was entitled to rely on the opinion of the trained police investigator with 17 years' experience, as set forth in his affidavit (Dkt. 241-1, pp.4-5). While Fuller claims that the warrant is "unnecessary" because the investigators already had evidence of where they believed drugs are being kept, that is immaterial. There is no legal requirement of "necessity" for issuance of a GPS tracking warrant, nor does Fuller establish how the information that the investigators already possessed undermines the validity of the probable cause.[2]

_____

[2] The remaining arguments by Fuller challenge various individual statements in unspecified affidavits (e.g., Dkt. 241-1, p.12 ("With respect to the remaining applications for search warrants made by law enforcement…"). As such, the government is unable to determine the nature of the specific argument or to which search warrant affidavit it relates.

## *Franks* Hearing

The defendants attempt to raise a challenge under *Franks v. Delaware*, 438 U.S. 154 (1978), claiming that there was intentional or reckless misstatements of fact and material omissions in the affidavits of Investigator Minurka and/or Investigator Marsherall.[3] (Dkt. 240-1, pp.13-17; Dkt. 241, pp.16-19).

### Applicable Law

To warrant relief under *Franks*, a defendant must "make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: '(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'" *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998)).

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable

---

[3] The defendants are vague about exactly which affidavit(s) they claim contain these alleged misstatements, and do not identify with any specificity exactly what information is false or misstated. This is fatal to a *Franks* claim as it does not rise to the "substantial preliminary showing" required. *Franks v. Delaware*, 438 U.S. at 155-56.

statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171.

### Discussion

In this case, the defendants' *Franks* challenge is doomed at the outset since they have failed to identify a single allegedly false statement in the search warrant application, let alone established how such statement was necessary to the probable cause to support the warrant. Accordingly, to the extent the defendants raise a *Franks* challenge regarding misstatements, that should be rejected summarily.

The defendants contend that a *Franks* violation occurred based on the omission of their claims that (a) Jackson is related to Fuller as cousins; (b) Jackson was involved in the management and maintenance of the rental properties at 19 and 49 Angle Street; and (c) the police witnessed him acting in that capacity. Setting aside the failure to establish the factual truth of these statements, the defendants simply have not demonstrated how the alleged relationship between them, or Jackson's alleged and unexplained "involvement in the management and maintenance" of these drug houses would have defeated the probable cause based on the facts set forth in the affidavits. Even if they provided potentially innocent explanations for their presence together at the drug house locations on Angle Street, he fails to establish that such facts (if true) would defeat the rest of the information supporting a finding of probable cause. To the contrary, it is not uncommon for individuals to engage in organized criminal activity with those whom they trust, including relatives. Moreover, it is also not uncommon for individuals to attempt to conceal their involvement in narcotics

trafficking at different locations by claiming those locations are merely rental properties. In any event, "[t]he ultimate inquiry on a motion to suppress is not—as defendants contend— whether the affidavit contains false allegations or material omissions, but whether after putting [the challenged statements] aside, there remains a residue of independent and lawful information sufficient to support probable cause." *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985) (citation omitted). In this case, "even if [Jackson]'s factual assertions are correct, 'after putting aside [the allegedly] erroneous information and material omission, 'there remains a residue of independent and lawful information sufficient to support probable cause.'"" *Iverson v. United States*, No. 14-CR-197, 2020 WL 1986924, at *4 (W.D.N.Y. Apr. 27, 2020) (quoting *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) and *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985)).

Jackson makes much of the fact that the affidavits did not include information that Jackson was not identified by informants who participated in controlled purchases of drugs from these locations. (Dkt. 240-1, p.8, par. F(3), F(6), p.9, par. Par. F(9)-(10)). If the affidavit suggested that Jackson participated in the controlled purchase, and an informant failed to identify him, and *that* information was omitted, there might be a *Franks* concern. However, there was no suggestion in the affidavit that Jackson was a participant in any of the controlled purchases from Angle Street. As such, there is no omission, let alone a material omission. In any event, the affidavit "need not relate unproductive or unsuccessful efforts in the course of the investigation." *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993) (citations omitted) (no *Franks* violation where affidavit did not disclose that CI failed to successfully purchase cocaine from on two occasions from a location). Similarly, Fuller's bald assertion of "[o]missions or falsehoods as to any connection" between Fuller and CI-1,

CI-2, CI-3, and CI-4 is unclear. (Dkt. 241, p.17). Again, without actually identifying a false statement, or omission, the *Franks* claim fails.

The defendants' statement that Investigator Minurka "lacked actual personal knowledge of the alleged activities in this case" is simply not true. Investigator Minurka investigated these individuals for over three years before the January 2024 take-down of the wiretaps. (Dkt. 240-1, p.57 (noting investigation into Jackson and Fuller began in October 2021). During that time, he spoke with confidential informants about how this operation worked, engaged in surveillance along with other investigators, listened to wiretapped conversations that were corroborated by pole camera video footage and confidential informant controlled purchases in which he participated. As a result of that personal participation, and his extensive training, background, and experience as detailed in the affidavit, he had ample basis to opine as to the meanings of the activities of these individuals and their wiretapped conversations.

The government does not understand Jackson's claim that Investigator Frasca's identification of him was "misleading." (Dkt. 240-1, p.9 par F(11), p.15 subparagraph (e)). In the affidavit in support of the wiretap for Fuller's phone, Investigator Minurka states that Investigator Frasca communicated with Jackson over a phone number that Jackson had previously provided to her.  (Dkt. 240-1, p.373). The government is not aware how this is assertion is misleading in any manner. Jackson's view that it would have been less "illogical" to rely on the association of Fuller with CI-1 through CI-4 and Fuller's association with Jackson is simply irrelevant. The fact is he was connected to that phone

number by providing it and communicating over it to Investigator Frasca, as accurately stated in the affidavit.

**Particularity Requirement**

In a wholly conclusory fashion, Jackson claims that the search warrants were "broad and open ended" and failed to establish that the items sought were likely to exist. (Dkt. 240-1, p.17(B)-18. He is wrong.

### Applicable Law

The Second Circuit has held that to meet the particularity requirement of the Fourth Amendment, a warrant must: (1) "identify the specific offense for which the police have established probable cause"; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (internal citations and quotation marks omitted).

*United States v. Davis*, 2021 WL 826261, at *7 (E.D.N.Y. Mar. 3, 2021).

### Discussion

The warrants in this case clearly satisfy each of these requirements and were neither overbroad nor limitless. The defendants fail to demonstrate how the descriptions of the premises or the lists of items to be seized are inadequate, or identify any item that was seized beyond the scope of the warrant.

Defendants "object[] to the open ended and limitless general search associated with electronic devices, particularly [their] cell phone[s]." (Dkt. 240-1, p.18; *see also* Dkt. 241, pp.18-19). First, neither defendant has identified any specific phone as "his" phone, nor established a sworn factual basis to establish standing to challenge the seizure or search of

any phone. Regardless, the authorization for the seizure and search of phones in the warrant for 45 Willmont Street (which is identical to the authorization in the warrant for 86 Forester Street) was not open ended, limitless, or overbroad. Rather, it was limited to cell phones "believed to belong to trafficker(s) both present and not present" and to search for identifying information for the cell phone (e.g., "ISMI, MSN and/or MSID numbers") as well as "records kept electronically or digitally within the telephone's memory to include any data that tends to identify the user or subscriber of the phone including telephone number, email addresses and I.P. address, a log of recent incoming and outgoing phone calls, a list of contacts or phonebook, SMS/MMS text messages, photos, videos, applications and the contents therein, specifically related to the crimes enumerated in all affidavits, orders, applications, and progress reports since October of 2021, the beginning of the investigation into this Drug Trafficking Organization which are incorporated by reference and are made a part thereof." (Dkt. 240-1, p.51-52).

Accordingly, the cell phone search authorization was not open-ended and limitless but, rather, tailored to the case and the charges under investigation.

**<u>Good Faith Doctrine</u>**

Even assuming *arguendo* that any of the challenged search warrants affidavits lacked probable cause, or were overly broad, evidence seized or obtained pursuant to the warrants is still admissible because the executing agents and officers relied on the warrants in "objective good faith." *United States v. Leon*, 468 U.S. 897, 923 (1984). The rationale underlying this good-faith exception is that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Id.* at 919.

The Court in *Leon* specified four circumstances in which the good faith exception does not apply. An executing officer's reliance on a search warrant will not be deemed to have been in good faith:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted).

Here, there is no evidence that the issuing magistrates were knowingly misled or that they wholly abandoned their judicial role. In addition, for the reasons set forth above, the search warrants at issue were not facially deficient, let alone so facially deficient or so lacking in probable cause that reliance upon them would have been objectively unreasonable. *See Leon*, 468 U.S. at 923; *Cancelmo*, 64 F.3d at 807.

Accordingly, the motions to suppress should be denied in their entirety.

## SUPPRESSION OF STATEMENTS

Each defendant moves for suppression of statements. (Dkt. 240-1, pp.18-19; Dkt. 241, pp.8-9).

### Jackson

Jackson moves to suppress post-arrest statements on the ground that "they were involuntarily made in violation of his constitutional rights under the Fifth Amendment." (Dkt. 240-1, p.19). His affidavit in support of this motion asserts simply that his statements

"were not freely and voluntarily made but as a result of pressure and compulsion by law enforcement." (Dkt. 240-2, p.2). Jackson has failed to submit an affidavit alleging a sworn factual basis that supports suppression. Instead, he has offered a vague and conclusory statement, in essence no different than his attorney's motion, which is insufficient to obtain a hearing. *See United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) (suppression hearing properly denied where motion was supported only by affidavit of defense counsel). Since he has alleged no facts (i.e., conduct of law enforcement) that establish any alleged violation of his constitutional rights, the motion should be denied without a hearing. *See United States v. Mathurin*, 148 F.3d 68, 68-70 (2d Cir. 1998) (Although a defendant's sworn statement that he was not advised of his *Miranda* warning is sufficient to require a suppression hearing, a defendant's "bald assertion that a statement was involuntary" "[w]ithout specification of the factual basis for such a characterization" is not).

**Fuller**

Fuller has filed an affidavit in which he asserts that on the day of his arrest on January 17, 2024 he was "asked some incriminating questions" before being read his *Miranda* rights, and the statements he made were therefore in violation of his rights. (Dkt. 242-3). However, Miranda warnings are not required prior to all questions, only when a defendant is "in custody" and subject to "interrogation." Fuller's affidavit fails to articulate a factual basis to establish either of those prerequisites for *Miranda* warnings. Fuller does not identify: (1) any alleged "incriminating questions" that occurred prior to his *Miranda* warnings; (2) a factual basis that to support a characterization that "incriminating questions" he was asked legally qualify as "interrogation" such that they were required to be preceded by *Miranda*; (3) the specific statements he made he is trying to suppress; (4) or even

where those statements occurred. As such, for the same reasons as Jackson, Fuller has failed to establish a factual basis to suppress any statements, and his motion must be denied at this time.[4]

The government reserves its right to establish that the statements made by defendants were made in accordance with their constitutional rights.

## **DISCLOSURE OF CONFIDENTIAL INFORMANT IDENTITIES**

The defendants move for disclosure of the identities and backgrounds of the confidential informant and cooperating witnesses in this case. (Dkt. 240-1, pp.19-25; Dkt. 241, pp.19-20).

As a general rule, the government is not required to disclose the identity of confidential informants. *See Rovario v. United States*, 353 U.S. 53, 59 (1957). To obtain such disclosure, a defendant must demonstrate that, absent disclosure, he "will be deprived of a fair trial." *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997). In other words, the government is not required to disclose the identity of an informant unless the defendant demonstrates that such information is "material to the defense." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988). To determine whether disclosure is warranted, a court should consider "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other

---

[4] The government also provided notice concerning spontaneous statements Fuller made to police March 20, 2023 at 19 Angle Street after his 4-wheeler was towed by police. The defendant was not arrested and was not in custody. The defense has been provided a copy of the body worn camera footage of these statements, and a description of the circumstances of these statements is contained in Fuller's motion (Dkt. 241-2, pp.20-21). The government is aware of no basis upon which suppression could be sought on these statements. The defendant did not move to suppress these statements, apparently believing the date on the Rule 12(b)(4) to be in error. (Dkt. 241, p.8).

relevant factors." *Rovario*, 353 U.S. at 62. The defendant bears the burden of demonstrating the need for disclosure of an informant's identity. S*ee Fields*, 113 F.3d at 324. "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet this burden." *Id*. The disclosure of a confidential informant's identity is committed to the sound discretion of the Court. *Id*.

Viewed as simply a discovery request, the motion should be denied at this time. As the court reasoned in *United States v. Taylor*, 707 F. Supp. 696, 703 (S.D.N.Y. 1989), "especially in narcotics cases, where the dangers of witness intimidation, subornation of perjury or actual injury to witnesses are great, the defendant's request for a witness list should not be granted absent a particularized showing of need." *See also United States v. Ginsberg*, 758 F.2d 823, 833 (2d Cir. 1985) (narcotics cases are well known to be accompanied by violence and threats of violence). Certainly the government's interest in protecting any confidential informants' safety before trial outweighs the defendant's generalized, and unsupported, statements of need to learn informants' identities months before trial. *United States v. Jimenez*, 824 F. Supp. 351, 365 (S.D.N.Y. 1993).

In this case, any informants would be neither key witnesses nor participants in the crimes for which the defendants have been indicted. Accordingly, their speculative interest in learning the identities of the informants is outweighed by the government's interest in protecting them. The presumption in favor of preserving the confidentiality of informants' identities is particularly relevant to a drug case, such as this one, in which multiple firearms were seized from locations controlled by the charged defendants, who have prior felony

convictions for drug trafficking, illegal firearms possession, and robbery. *Jimenez, supra*, 824 F. Supp. at 365.

Should the government decide to call a confidential informant at the trial of this case, it will disclose such informant's identity along with the identity of its other trial witnesses in the government's pretrial disclosures either two weeks before trial or at the time of the pretrial conference.  At that time, the government will also turn over any *Giglio* impeachment material relating to any informant which the government will call to testify. *See United States v. Grant*, 2003 WL 1884297 (D. Del. 2003) ("The identity of a CI who was an active participant in the transaction at issue need not be released until one week before trial if the Government indicates its intention to call the CI as a witness at trial and if the Government provides the defendant with the necessary impeachment information at that time.").

## EARLY PRODUCTION OF JENCKS ACT MATERIAL

The defendants move for early disclosure of Jencks Act material. (Dkt. 240-1, pp.25-27; Dkt. 241, pp.20-21).

The Jencks Act requires the government to produce any prior statements of a witness that relate to the subject matter of the witness's testimony and that are in the government's possession, after the direct examination of the witness. 18 U.S.C. § 3500. Because the Jencks Act provides the exclusive procedure for discovering statements a government witness has given to law enforcement agents, *United States v. Novello*, 410 F.2d 536, 543 (2d Cir. 1969), this Court does not have the authority to order early disclosure. *See In Re United States*, 834 F.2d 283, 286-87 (2d Cir. 1987); *United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974).

Nonetheless, consistent with the practice in this District, the government agrees to disclose Jencks Act material prior to trial in accordance with the pre-trial order of the trial court.

## FED.R.EVID. 404(b), 608 & 609 DISCLOSURE

The defendants move for disclosure under FED.R.EVID. 404(b), 608 and 609. (Dkt. 240-1, p.27; Dkt. 241, pp.5-7).

FED.R.EVID. 404(b) requires the government to provide "reasonable notice in advance of trial" of the "general nature" of prior uncharged crimes that the government intends to use at trial. No set timetable for notice is required, however, as evidence the government may seek to offer at trial often changes as the proof unfolds or as possible defenses are revealed at trial. *See United States v. Aguirre-Parra*, 763 F.Supp. 1208, 1217 (S.D.N.Y. 1991). The reasonableness of Rule 404(b) notice is determined by the particular circumstances of the case. *United States v. Falkowitz*, 214 F.Supp.2d 365, 393 (S.D.N.Y. 2002) (permitting disclosure of Rule 404(b) evidence two weeks before trial).

FED.R.EVID. 609 requires a party to provide "reasonable written notice" of the party's intent to use evidence of a criminal conviction more than ten years old to impeach a witness. *See United States v. Livoti*, 8 F.Supp.2d 246, 250 (S.D.N.Y. 1998) (holding government has no obligation to provide impeachment material under Rule 609 prior to trial unless it involves a conviction more than ten years old).

In this District, magistrate courts routinely defer issues relating to the admissibility of evidence under FED.R.EVID. 404(b) and impeachment material under 608/609 to the trial

court. *See United States v. Newbern*, 2017 WL 5507577, at *5 (W.D.N.Y. Nov. 16, 2017) (stating that "the issue of admissibility of [Rule 404(b) and 609] evidence . . . is best left to the determination of the trial judge at the time of trial"); *see also United States v. Torres*, 2014 WL 3548935, at *5 (W.D.N.Y. July 17, 2014) (same). In the event the defendants intend to testify, the government intends to impeach each defendant with their prior felony convictions that are set forth in the criminal history report previously provided to them. The government also reserves its right to also offer evidence of those felony convictions under 404(b) should one of those prior felony convictions become relevant to a disputed material issue based on a defense claim. Consistent with the practice in this District, the government agrees to disclose the specific nature of any evidence it intends to offer under FED.R.EVID. 404(b) and 608/609, at the time it is ordered to do so by the trial court.

## GIGLIO/BRADY/COPPA

The government acknowledges its obligation pursuant to *In re, United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001). *See also Brady v. Maryland*, 373 U.S. 83 (1963). To the extent that the government is aware that any such information is known to exist, the defendant has been advised, with the exception of impeachment material (*Giglio*[5] material). *Giglio* material will be disclosed two weeks before trial upon stipulation with defense counsel that it will do the same with its witness statements. The government also acknowledges its continuing obligation with respect to all material exculpatory information.

---

[5] Giglio v. United States, 405 U.S. 150 (1972).

## DISCOVERY

The government has previously provided voluminous discovery material, which includes wiretap and search warrant applications and orders, search warrants, reports (police, lab, property custody, etc.) from the execution of those warrants, body worn camera footage and photographs of executing officers, wiretap recordings, data and transcripts, laboratory reports of seized evidence, video recording and reports of the defendant's interview, criminal history reports, and transcripts of underlying court appearances.

The government has addressed additional requests made by the defense in its motion[6] and, to the extent the defense requests additional material and demonstrates its entitlement to it under Rule 16, the government will continue to be responsive to those requests to the best of its ability. However, the extent the defendant seeks additional material (e.g., grand jury evidence, co-conspirator statements, any law enforcement document concerning the investigation, etc.), those requests should be denied as beyond the scope of Rule 16 discovery.

## Expert Disclosure/Notice

Some notice of expert testimony has been provided in the form of lab reports which have been turned over in discovery. The government intends to call the experts identified in the provided reports, and will comply with the expert disclosure requirements of Rule 16(a)(1)(G) and the Court's Scheduling order. Any additional lab reports will provided promptly upon receipt.

---

[6] Additional disclosures were provided and/or made available to the defense as a result of requests in their motion were submitted, including pole camera footage from multiple other locations, as well as search warrants, reports and photographs of evidence from search warrants at other locations.

## Government's Discovery Demand

The defendant having made a demand for discovery and inspection pursuant to Rule 16(a)(1)(A), (B), (D), (E), (F) and/or (G) of the Federal Rules of Criminal Procedure, and counsel for the United States having complied with said demand, the United States now, pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, hereby demands to inspect and copy or photograph the following:

1.    All books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial;

2.    Any and all results or reports of physical or mental examinations and of scientific tests of experiments made in connection with the instant case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at trial when the results or reports relate to his testimony;

3.    Disclosure, pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, of a written summary of testimony the defendant intends to use under Rules 702, 703 and 705 of the Federal Rules of Evidence, including the opinions of witnesses, the cases and reasons therefor and the witness' qualifications.  With regard to the underlying bases for an expert's testimony, that should cover not only written and oral reports, tests, reports and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rules of Evidence 703, including opinions of other experts (see Conference Committee Notes, 1993 Amendment, Rule 16, Federal Rules of Criminal Procedure, p. 84);

4.    Pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, counsel for the United States requests that, prior to the trial of the above-captioned case, the defendant disclose all prior statements, as defined in F.R.Cr.P. 26.2(f), of any witness to be called by the defendant in the trial of this case, as such statements relate to the subject matter of the witness' direct testimony.  Further, counsel for the United

States requests that such material be provided on the same basis that we are to supply materials pursuant to 18 U.S.C. § 3500, that is, no later than two weeks prior to the start of trial[7]; and

5.    If, prior to or during trial, the defendant discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this Rule, the defendant shall promptly notify the attorney for the United States of the existence of the additional evidence or material as required by Rule 16(c) of the Federal Rules of Criminal Procedure.

## BILL OF PARTICULARS

The defendants move for a bill of particulars under FED.R.CRIM.P. 7(f). (Dkt. 240-1, pp.40-42; Dkt. 241, pp.4-5). Their motions should be denied.

## Applicable Law

FED. R. CRIM. P. 7(f) empowers the Court to direct the filing of a bill of particulars in certain limited circumstances. The purpose of a bill of particulars is to enable a defendant to "identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars is required only when the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he is accused. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990).

---

[7] Pursuant to the Local Rules, we request a meeting with defendant's counsel as soon as possible to discuss the resolution of any problems with this reciprocal discovery request.

A bill of particulars may not be used to compel the government to provide "evidentiary detail" about its case. *Torres*, 901 F.2d at 234; *see also United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991) (holding that bill of particulars not required to specify activities by which defendant furthered conspiracy). Similarly, a bill of particulars may not be used to compel the government to disclose the manner in which it will prove the charges or preview the evidence or theory of its case. *See United States v. Perez*, 940 F.Supp. 540, 550 (S.D.N.Y. 1996); *United States v. Taylor*, 707 F.Supp. 696, 699 (S.D.N.Y. 1989); *United States v. Biaggi*, 675 F.Supp. 790, 809 (S.D.N.Y. 1987). "In other words, a bill of particulars should be granted where the information sought is "necessary" to prepare a defense and to avoid double jeopardy, not where it is merely "useful" to the defense in ascertaining the government's proof." *United States v. Simmons*, 2016 WL 285176, at *15 (W.D.N.Y. Jan. 22, 2016), report and recommendation adopted, No. 13-CR-6025, 2016 WL 1127802 (W.D.N.Y. Mar. 23, 2016).

Whether to order the filing of a bill of particulars rests with the discretion of the court. *See United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). "In exercising that discretion, the court must examine the totality of the information available to the defendant – through the indictment, affirmations, and general pretrial discovery – and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *United States v. Bin Laden*, 92 F.Supp.2d 225, 233 (S.D.N.Y. 2000); *see also Walsh*, 194 F.3d at 47 (stating "a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means"). Courts have generally denied a bill of particulars when the information sought by the defendant is contained in the indictment or "some acceptable alternative form," such as discovery materials previously provided by the government. *United States v. Desantis*, 802 F.Supp. 794,

797-798 (E.D.N.Y. 1992); *see also Walsh*, 194 F.3d at 47 (stating "a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means"); *Torres*, 901 F.2d at 234.

"A bill of particulars confines the government's evidence at trial to the particulars furnished." *United States v. Payden*, 613 F.Supp. 800, 816 (S.D.N.Y. 1985). The Court, therefore, must "balance restricting the Government's proof against protecting the defendant from surprise." *Id.*; *see also United States v. Mahaffy*, 446 F.Supp.2d 115, 120 (E.D.N.Y. 2006) (stating bill of particulars would "confine the Government's proof to particulars furnished and restrict unduly the Government's ability to present its case") (internal quotation marks omitted).

The requests for type and quantities of drugs a defendant distributed and specifics of how he joined the conspiracy are not the proper subject for a bill of particulars. *See United States v. Walker*, 2021 WL 1725513, at *13 (W.D.N.Y. 2021) (collecting cases denying particularization regarding the amounts, date and locations of controlled substances trafficked, and particulars of when the defendant joined the conspiracy). Likewise, courts deny the motion for further particulars regarding how, when and where a defendant possessed firearms and how the possession was in furtherance of a drug trafficking crime. *United States v. McCoy,* 14–CR–6181W, 2016 WL 5335443, at *5 (W.D.N.Y. Sept. 21, 2016) ("Courts routinely deny requests for further particularization of 924(c) counts, including specific dates and places of firearms possession, that span a period of time."); *see also United States v. Bortnovsky,* 820 F.2d at 574; *United States v. Calvente*, 2013 WL 4038952, *1 (S.D.N.Y.2013) (denying request for additional particularization of § 924(c) charge, including "the dates,

times, and locations that each defendant possessed firearms[,]" because "[n]one of the requests for particularity are necessary for the [d]efendants to prepare for trial, prevent surprise, or interpose a double jeopardy claim"); *United States v. Mason*, 2007 WL 541653, *4–5 (S.D.N.Y.2007) (denying request for particulars including "the dates and places that [defendant] possessed firearms, and the types of firearms he possessed"; "[t]he superseding [i]ndictment reveals that this case is a generic narcotics conspiracy, wherein firearms were used to further narcotics trafficking[,] ... [and] defendants seek 'the very sorts of information with respect to which courts routinely deny requests for particularization' ") (quoting *Bortnovsky*, 820 F.2d at 474); *United States v. Muyet*, 945 F.Supp. 586, 601 (S.D.N.Y.1996) (denying request for particulars regarding the "dates and times he is alleged to have used or carried a firearm in relation to the narcotics conspiracy" where "the [g]overnment explained that its witnesses will testify that the defendants carried firearms in relation to their narcotics dealing, but they may not be able to specify the dates on which the defendants carried firearms").

## Discussion

In this case, a bill of particulars wholly unnecessary. The 95-page criminal complaint provides extensive details of the investigation, evidence, and description of the defendants' and co-conspirators' conduct with dates, times, and locations. Further, the government made detailed oral and written proffers of the evidence describing the operation of this narcotics conspiracy in connection with the detention proceedings. Finally, the defendant has been provided extensive and voluminous discovery, which includes:

- wiretap recordings and transcripts;

- search warrant affidavits and applications detailing the investigation and evidence against the defendants;

- reports, videos, and photographs of the execution of over a dozen search warrants;

- reports and details of the forensic examination of the controlled substances and firearms seized at these locations;

- pole camera video footage of him and co-conspirators at multiple locations;

- surveillance reports from pole camera and mobile surveillance of him and co-conspirators; and

- video recording and reports of his post-arrest interview, among other information.

Collectively, all of this information and the disclosures, along with the government's Rule 12(b)(4) notice, more than adequately informs the defendants of the crimes charged, including the identities of co-conspirators. Such information will enable the defendant to adequately prepare a defense, avoid prejudicial surprise at trial, and raise any possible defense of double jeopardy.

Although not required, to assist the defense with respect to the 924(c) count, the government advises defendant that it intends to prove that defendants Jackson and Fuller actually, constructively, and jointly possessed firearms in furtherance of the narcotics conspiracy charged in Count 1. This possession occurred in their vehicles, at their residences, drug houses at 19, 49, 69, and 96 Angle Street and 86/88 Forester Street, and the residences of their charged co-conspirators, to protect themselves, their co-conspirators, their drugs, and the proceeds of drug trafficking. The government intends to offer witness testimony concerning the defendants' possession of firearms throughout the conspiracy, wiretap calls discussing firearms, and firearms (and photographs of firearms) seized during the

investigation as proof of this Count. With the exception of witness statements, all of this information has been provided to the defense. For example, the government will offer proof of at least the following 17 firearms seized in connection with the investigation at the following locations on the following dates:

| DATE | LOCATION | NATURE OF LOCATION | FIREARMS | TYPE |
|---|---|---|---|---|
| January 17, 2024 | 45 Willmont Street | Jackson's residence | 1 | 9mm pistol |
| January 17, 2024 | 86 Forester Street | Fuller's residence | 4 | 5.56x45mm rifle; 12 gauge shotgun and two pistol frames |
| January 12, 2024 | 218 Privet Way | Co-conspirator residence | 2 | 9mm pistol; 9mm pistol |
| January 17, 2024 | 186 Mobile Street | Co-Conspirator residence | 5 | 45 Auto pistol; 9mm pistol; 9mm pistol; 12 gauge shotgun; 7.62x39mm pistol |
| January 12, 2024 | 656 Jefferson Ave | Co-Conspirator residence | 2 | 9mm pistol; 222 rifle |
| January 17, 2024 | 49 Angle Street | Drug House | 1 | 9mm pistol |
| January 17, 2024 | 96 Angle Street | Drug House | 1 | 25 Auto pistol |
| January 17, 2024 | 69 Angle Street | Drug House | 1 | 9mm pistol |

Any further particularization is unnecessary and the defendant's motion for a bill of particulars therefore should be denied.[8]

---

[8] The government notes that defendants are charged under 18 U.S.C. § 2 in the 924(c) count, and further advises the defendants that it intends to argue that the defendants are guilty under *Pinkerton* liability as well. Under *Pinkerton*, Jackson and Fuller can be held responsible for their co-conspirators' possession of a firearm in furtherance of the drug conspiracy if that possession was a reasonably foreseeable consequence of their unlawful agreement, whether or not Jackson or Fuller possessed a firearm. *See Rosario v. United* States, 164 F.3d 729, 734 (2d Cir. 1998) (outlining the elements of *Pinkerton* liability for a §924(c) violation) (citations omitted); *United States v. Masotto*, 73 F.3d 1233, 1239 (2d Cir. 1996) (reaffirming Second Circuit's "precedent that a *Pinkerton* instruction may be given as an alternative theory of liability under § 924(c)."); *United States v. Thomas*, 34 F.3d 44, 50 (2d Cir. 1994) (upholding § 924(c) conviction where the jury was instructed on both aiding and abetting and *Pinkerton* liability). As a result, "requiring the Government to further delineate its theory of liability in

## PRESERVATION OF ROUGH NOTES

The defendants move for an order directing law enforcement personnel who participated in this investigation to retain and preserve any rough notes. (Dkt. 240-1, p.42; Dkt. 241, p.21). In this Circuit, notes of a government agent which are incorporated into a written report need not be preserved or produced. *See United States v. Elusma*, 849 F.2d 76, 79 (2d Cir. 1988); *United States v. Gotchis*, 803 F.2d 74, 77-78 (2d Cir. 1986). Nonetheless, the government agrees to instruct the law enforcement officers and agents assigned to this investigation and prosecution to retain and preserve any rough notes.

## LAW ENFORCEMENT PERSONNEL FILES

The defendants move for release of law enforcement personnel files. (Dkt. 240-1, pp.42-43; Dkt. 241, p.22). As indicated above, the government is aware of its obligations pursuant to *Brady* and *Giglio*. The government has well established procedures in place to review each testifying officer's personnel file for *Brady* or *Giglio* material and intends to follow those procedures in connection with this case.

## PRECLUSION OF IDENTIFICATION TESTIMONY

The government has advised Jackson that it intends to offer identification testimony from a witness who identified the defendant from a photo array. It does not intend to offer such testimony with respect to Fuller. Jackson seeks preclusion of such testimony or a pretrial evidentiary hearing concerning the identification procedure. (Dkt. 240-1, pp.43-44).

---

this regard would run afoul of proper particularization." *United States v. Pirk*, 282 F.Supp.3d 603, 614-615 (W.D.N.Y. Oct. 19, 2017).

Fuller seeks preclusion. (Dkt. 241, p.19). Both motions should be denied, Jackson's summarily on the merits as insufficient, and Fuller's as moot.

**Applicable Law**

To be entitled to a *Wade* hearing, a defendant must "make a threshold showing that the surrounding circumstances or actual conduct of the [pretrial identifications] were suggestive." *United States v. Leonardi*, 623 F.2d 746, 755 (2d Cir. 1980); *see also United States v. Washington*, No. 05-CR-558 NG, 2006 WL 3359060, at *2 (E.D.N.Y. Nov. 17, 2006) ("Where ... the defendant has failed to make a threshold showing of impropriety in the conduct of an array, a pre-trial hearing into the identification procedures is not warranted."). Put another way, "[a] defendant may not baldly request a <u>Wade</u> hearing; rather he must allege facts supporting his contention that the identification procedures used were impermissibly suggestive." *United States v. Berganza*, No. S(4) 03 CR. 987(DAB), 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005); *see also United States v. Swain,* No. S408 Cr. 1175(JFK), 2011 WL 4348142, at *7 (S.D.N.Y. Aug. 16, 2011) (defendant not entitled to a hearing where his "suggestion of impropriety in the presentation of a photo array is mere speculation"); *United States v. Adeniyi,* No. 03 Cr. 86(LTS), 2003 WL 21146621, at *3 (S.D.N.Y. May 14, 2003) (denying a motion without a hearing where the defendant had failed to proffer "any information indicating that there were irregularities in the presentation of the arrays"); *United States v. Hamideh*, No. 00 Civ. 950, 2001 WL 11071, at *1 (S.D.N.Y. Jan. 3, 2001) (holding that "threshold showing" not satisfied where defendant was only individual smiling in photographic array of six); *United States v. Giovanelli,* 747 F. Supp. 875, 885 (S.D.N.Y. 1989) (denying a request for a hearing where the defendant did not allege "any concrete grounds" to suggest that identification procedures were improper).

## Discussion

Here, Jackson has not established the required threshold showing to necessitate a hearing. He does not allege *any* impropriety in the identification procedure or articulate anything improper or suggestive about the photo array itself, despite having been provided the photo array and the report of the procedure. His motion provides no basis to conclude that the circumstances or conduct relating to the identification of the defendant was in any way suggestive, and he has failed to make any threshold showing of suggestiveness that would require a hearing. *Cf.*, *United States v. Ikoli*, No. 16-CR-148(AJN), 2017 WL 396681 at *3 (S.D.N.Y. Jan 26. 2017) (denying request for a *Wade* hearing where defense counsel "generically argues that because the Government's discovery disclosures 'do not detail the circumstances of how these three witnesses came to identify Mr. Ellis,' he must assume that 'the identification proceedings were impermissibly suggestive and the witnesses should not be permitted to make an in-court identification of Mr. Ellis.'") with *United States v. Wilson*, 493 F.Supp.2d 364, 382-83 (E.D.N.Y. 2006) (granting a request for a *Wade* hearing because the defendant had specifically "raised concerns over the differing skin tones and ages between himself and the five fillers used in the lineups").

Accordingly, defendants' motion for preclusion of identification testimony or a *Wade* hearing should be denied.

## AUDIBILITY HEARING

Fuller requests a pretrial audibility hearing to determine the admissibility of any recording. (Dkt. 241, p.23). The defendant has been provided numerous recordings in this case that generally fall into one of two categories: (1) recordings of telephone conversations of the defendant and his co-conspirators intercepted pursuant to eavesdropping warrants; (2)

video recordings of the defendant's statements made to police either recorded on body worn cameras or in interview rooms at the Public Safety Building. The government has provided numerous draft transcripts of recordings to the defendant.

The defendant should present any issues concerning the audibility of any recordings or accuracy of any transcripts to government counsel for review and possible resolution. However, in the event that the parties cannot resolve questions of recording audibility or transcript accuracy, the government agrees that an audibility hearing may be appropriate. *See United States v. Chiarizio*, 525 F.2d 289, 293-94 (2d Cir. 1975); *United States v. Bryant*, 480 F.2d 785, 789 (2d Cir. 1973).

## <u>CO-DEFENDANT MOTIONS AND</u> <u>FURTHER MOTIONS</u>

Jackson generically requests to join all motions of co-defendants and seeks leave to file supplemental motions "if deemed necessary by the defense." (Dkt. 240-1, p.44). Fuller seeks leave to "join in all requests for disclosure, both general and specific." (Dkt. 241, p.23), and to file supplemental motions "should the facts and circumstances not now within my knowledge indicate that such additional motions are warranted." (Dkt. 241, p.24).

For the reasons set forth by Judge Wolford in *United States v. Cobb*, 544 F.Supp.3d 310, 344 (W.D.N.Y. 2021), the Court should deny any boilerplate motion to join co-defendant motions. Similarly, the Court should also deny Jackson's boilerplate motion for leave to file additional motions. *Cobb*, 544 F.Supp.3d at 345 ("In the event that the defendant[] desire[s] to file a subsequent pretrial motion that is untimely, [he] should seek

leave to do so and explain why the motion was not filed in a timely fashion (e.g., based on newly discovered information, a good cause basis for not initially filing, *etc.*).").

Dated: Rochester, New York, September 29, 2025.

MICHAEL DIGIACOMO
United States Attorney

***/s/ Robert A. Marangola***

BY:    ROBERT A. MARANGOLA
Assistant United States Attorney
100 State Street, Room 500
Rochester, New York 14614
Phone: (585) 399-3980
Robert.Marangola@usdoj.gov

TO: Defense counsel