# Exhibit A

## AMENDED AFFIDAVIT FOR SEARCH WARRANT

**CITY OF ROCHESTER)**
**COUNTY OF MONROE)  SS**          **MONROE COUNTY COURT**
**STATE OF NEW YORK)**

**HONORABLE _____JULIE HAHN_____,Issuing Judge**

**IN THE MATTER OF THE APPLICATION OF THOMAS MINURKA OF THE ROCHESTER POLICE DEPARTMENT, FOR A SEARCH WARRANT TO SEARCH THE FOLLOWING DESCRIBED PREMISES/BUILDINGS:**

### 19 ANGLE STREET (DOWN)

The lower apartment located at 19 Angle Street, Rochester, New York. 19 Angle Street is described as a two and a half story, two family dwelling, which is constructed of pink siding and has brown trim along the windows and doors. The front of 19 Angle Street is located on the west side of Angle Street and faces east. The driveway to 19 Angle is located the south of the building. The numerals "19" are affixed to the pillar on the front porch. Entry can be made into the lower apartment by utilizing the door located on the south east corner of the house on the open front porch that faces east. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

### 19 ANGLE STREET (UP)

The upstairs apartment located at 19 Angle Street, Rochester, New York. 19 Angle Street is described as a two and a half story, two family dwelling, which is constructed of pink siding and has brown trim along the windows and doors. The front of 19 Angle Street is located on the west side of Angle Street and faces east. The driveway to 19 Angle is located the south of the building. The numerals "19" are affixed to the pillar on the front porch. The upstairs apartment can be entered by utilizing the door that faces east and is located on the northeast corner of the open front porch, once inside of the of the door on the northeast corner of the building the upstairs apartment can be accessed by utilizing the stairs inside of the hallway that are just inside the door. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 49 ANGLE STREET

The entire house located at 49 Angle Street, Rochester, New York. 49 Angle Street is described as a one story, single family dwelling, which is constructed of white siding and has white trim along the windows and doors. The front of 49 Angle Street is located on the west side of the portion of Angle Street that runs North and South. The two side doors are both on the south side of the location and are both fed by a set of stairs that lead to driveway. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 69 ANGLE STREET

The entire house located at 69 Angle Street, Rochester, New York. 69 Angle Street is described as a two and a half story, single family dwelling, which is constructed of green siding and has white trim along the windows and doors. The front of 69 Angle Street is located on the north side of Angle Street and faces south. 69 Angle Street has a covered front porch that has windows that face south. The numerals "69" are affixed to the siding below one of the front porch windows. The driveway to 69 Angle is located to the east of the building. Entry can be made into the building by utilizing the door that faces east located on the east side of the house in the driveway. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 96 ANGLE STREET

The entire house located at 96 Angle Street, Rochester, New York. 96 Angle Street is described as a two and a half story, single family dwelling, which is constructed of tan siding and has white trim along the windows and doors. The front of 96 Angle Street is located on the south side of Angle Street and faces north. 96 Angle Street has a covered front porch that faces north. The numerals "96" are affixed to one of the pillars on the front porch. The driveway to 96 Angle is located to the east of the building. Entry can be made into the building by utilizing the door that faces north on the front porch. The areas to be searched being the

entire premises described above, to include all its storage areas and curtilage.

## 25 KIRKLAND ROAD

The entire house located at 25 Kirkland Road, Rochester, New York. 25 Kirkland Road is described as a two and a half story, single family dwelling, which is constructed of light blue siding and has white trim along the windows and doors. The front of 25 Kirkland Road is located on the south side of Kirkland Road and faces north. 25 Kirkland Road has a covered front porch that faces north. The numerals "25" are affixed to one of the pillars on the front porch. Entry can be made into the building by utilizing the door that faces north and can be accessed from the front porch. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 45 WILLMONT STREET

The entire house located at 45 Willmont Street, Rochester, New York. 45 Willmont Street is described as a one and a half story, single family dwelling, which is constructed of light blue siding and has white trim along the windows and doors. The front of 45 Willmont Street is located on the south side of Willmont Street and faces north. The numerals "45" are affixed to the siding just below one of the windows that face north. The driveway to 45 Willmont Street is located to the west of the building. Entry can be made into the building by utilizing the door that faces west along the driveway. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 49 ROCKVIEW TERRACE

The entire house located at 49 Rockview Terrace, Rochester, New York. 49 Rockview Terrace is described as a two and a half story, single family dwelling, which is constructed of light green siding and has white trim along the windows and doors. The front of 49 Rockview Terrace is located on the west side of Rockview Terrace and faces east. 49 Rockview Terrace has a covered front porch that faces east. The numerals "49" are affixed to one of the pillars

on the front porch. Entry can be made into the building by utilizing the door that faces north and can be accessed from the driveway that runs west along the north side of the building. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 86 FORESTER STREET

The entire apartment located at 86 Forester Street, Rochester, New York. 86 Forester Street is described as a two and a half story, two family dwelling. The upstairs apartment of the building is considered 88 Forester Street and the downstairs apartment is considered 86 Forester Street. The numbers "88" and "86" are both affixed to the siding on outside of the enclosed front porch. The building at 88/86 Forester Street is constructed of white siding and has black trim along the windows and doors. The front of 88/86 Forester Street is located on the north side of Forester Street and faces south. Entry can be made specifically into 86 Forester by going through the eastern most front door that is inside of the enclosed front porch on the front of the building. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 88 FORESTER STREET

The entire apartment located at 88 Forester Street, Rochester, New York. 88 Forester Street is described as a two and a half story, two family dwelling. The upstairs apartment of the building is considered 88 Forester and the downstairs apartment is considered 86 Forester Street. The numbers "88" and "86" are both affixed to the siding on outside of the enclosed front porch. The building at 88/86 Forester Street is constructed of white siding and has black trim along the windows and doors. The front of 88/86 Forester Street is located on the north side of Forester Street and faces south. Entry can be made specifically into 88 Forester by going through the eastern most front door that is inside of the enclosed front porch on the front of the building. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 121 BERNARD STREET

The entire residence at 121 Bernard Street, Rochester, New York. 121 Bernard Street is described as a two story, single family dwelling, which is constructed of white siding and has white trim along the windows and doors. The front of 121 Bernard Street is located on the south side of Bernard Street and faces north. 121 Bernard Street has a covered front porch that faces north and has pillars that are painted brown. The numerals "121" are affixed to one of the pillars on the front porch. Entry can be made into the building by utilizing the door that faces north and can be accessed from the front porch. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 135 FIFTH STREET (UP)

The upstairs apartment located at 135 Fifth Street, Rochester, New York. 135 Fifth Street is described as a two story, two family dwelling, which is constructed of yellow siding and has brown trim along the windows and doors. The front of 135 Fifth Street is located on the west side of Fifth Street and faces east. The driveway to 135 Fifth Street is located the south of the building. The numerals "135" are affixed to the siding on the front of the house. Entry can be made into the upstairs apartment by utilizing the door located on the back of the house. After entering the rear door there is a stairwell that leads directly to the upstairs apartment at 135 Fifth Street. The areas to be searched being the entire upstairs apartment described above, to include all its storage areas and curtilage.

## 181 ROSSITER ROAD

The entire residence at 181 Rossiter Road, Rochester, New York. 181 Rossiter Road is described as a one and a half story, single family dwelling, which is constructed of red brick with white siding and has white trim along the windows and doors. The front of 181 Rossiter Road is located on the south side of Rossiter Road faces north. 181 Rossiter Road has a covered front porch that has a door that faces north. The numerals "181" are affixed to the front piller of the front porch.. The driveway to 181 Rossiter is located to the east of the

building. Entry can be made into the building by utilizing the door that faces east located on the east side of the house in the driveway. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 186 MOBILE DRIVE (GREECE, NY)

The entire residence at 186 Mobile Drive, Greece, New York. 186 Mobile Drive is described as a one story, single family dwelling, which is constructed of blue siding and has white trim along the windows and doors. The front of 186 Mobile Drive is located on the north side of 186 Mobile Drive and faces south. 186 Mobile Drive has a covered front porch that is adjacent to the attached garage and faces south. The driveway to 186 Mobile Drive runs north from the roadway. Entry can be made into the building by utilizing the door that faces south and is located inside of the front porch. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 245 SARATOGA AVENUE (REAR)

245/247 Saratoga Ave Rochester, New York is described as a two story, multiple family dwelling, which is constructed of tan brick. 245 Saratoga Ave is the rear apartment. Entry can be made into 245 Saratoga Avenue by utilizing the door that faces south and is located on the south side of the building. The numerical "245" is affixed to the awning above the door facing east. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

## 427 EMERSON STREET

The entire house at 427 Emerson Street, Rochester, New York. 427 Emerson Street is described as a two and a half story, single family dwelling, which is constructed of light green siding and has dark green trim along the windows and doors. The front of 427 Emerson Street is located on the south side of Emerson Street and faces north. 427 Emerson Street has a covered front porch that faces north. The numerals "427" are affixed to one of the pillars on the front porch. Entry can be made into the building by utilizing the door that faces east and

can be accessed from the walkway that runs south along the east of the building from the public sideway on Emerson Street. The areas to be searched being the entire premises described above, to include all its storage areas and curtilage.

**IN THE MATTER OF THE APPLICATION OF THOMAS MINURKA OF THE ROCHESTER POLICE DEPARTMENT, FOR A SEARCH WARRANT TO SEARCH AND SEIZE THE FOLLOWING DESCRIBED VEHICLES:**

### SUBARU OUTBACK

2024 WHITE SUBARU OUTBACK, BEARING NEW YORK STATE REGISTRATION LGD7979 WITH VIN NUMBER OF 4S4BTGUD5R3190701, REGISTERED TO SHAWNLE MCCLARY. DOB 01/10/76 OF 8005 E. RIVER ROAD, NEW YORK 14613.

### HYUNDAI ELANTRA

2008 BLACK HYUNDAI ELANTRA, BEARING NEW YORK STATE REGISTRATION KSK1935 WITH VIN NUMBER OF KMHDU46D28U525875, REGISTERED TO SHAWNLE MCCLARY. DATE OF BIRTH 01/10/76 OF 8005 E. RIVER RD, NEW YORK 14613.

### MAZDA 6

2008 TAN MAZDA 6, BEARING NEW YORK STATE REGISTRATION KXA2169 WITH VIN NUMBER OF 1YVHP80C185M18180, REGISTERED TO SHAWNLE MCCLARY. DATE OF BIRTH 01/10/76 OF 8005 E. RIVER RD, NEW YORK 14613.

### CHEVROLET SUBURBAN

2001 GRAY CHEVROLET SUBURBAN BEARING NEW YORK LICENSE PLATE LDX 6110 WITH A VIN NUMBER OF 3GNEC16T71G243409 REGISTERED TO KIMBERLY S MENDOZA WITH A DATE OF BIRTH OF 08/10/81 OF 86 FORESTER ST. LOWER, ROCHESTER, NEW YORK 14609.

### CHEVROLET TAHOE

2017 BLUE CHEVROLET TAHOE, BEARING NEW YORK STATE REGISTRATION HNL1850 WITH VIN NUMBER OF 1GNSKBKCXHR376774, REGISTERED TO

TIMOTHY T JACKSON. DATE OF BIRTH 12/05/60 OF 189 BIRR ST, ROCHESTER, NEW YORK 14613.

## FORD F-150

2005 RED FORD F-150, BEARING NEW YORK STATE REGISTRATION KWY1902 WITH VIN NUMBER OF 1FTRX14W55FB42114, REGISTERED TO TIMOTHY T JACKSON. DATE OF BIRTH 04/25/77 OF 189 BIRR ST, ROCHESTER, NEW YORK 14613.

## CHEVROLET SUBURBAN

2004 GRAY CHEVROLET SUBURBAN, BEARING NEW YORK STATE REGISTRATION KAC3884 WITH VIN NUMBER 3GNEC16Z84G246859, REGISTERED TO ERIKA GAMBLE-HALL. DATE OF BIRTH 02/10/1976 OF 583 DEWEY AVENUE ROCHESTER, NEW YORK 14613.

## BMW X5

2008 GRAY BMW X5, BEARING NEW YORK STATE REGISTRATION KAU7962 WITH VIN NUMBER 5UXFE43588L031113, REGISTERED TO CARL MCCOY. DATE OF BIRTH 11/12/1967 OF 186 WOODBINE AVENUE ROCHESTER, NEW YORK 14619.

## CHEVROLET TRAILBLAZER

2023 WHITE CHEVROLET TRAILBLAZER, BEARING NEW YORK STATE REGISTRATION KAS4457 WITH VIN NUMBER OF KL79MRSLXPB068311, REGISTERED TO HERTZ VEHICLES LLC OF 900 DOREMUS AVE PT NEWARK, NEW JERSEY 07114.

## FORD EXPLORER

2017 GOLD FORD EXPLORER, BEARING NEW YORK STATE REGISTRATION JBH6078 WITH VIN NUMBER OF 1FM5K8D82HGC52894, REGISTERED TO KIMBERLY BROWN DOB 04/03/76 OF 100 NORMANDY AVE, ROCHESTER NEW YORK 14619

**IN THE MATTER OF THE APPLICATION OF THOMAS MINURKA OF THE ROCHESTER POLICE DEPARTMENT, FOR A SEARCH WARRANT TO SEARCH THE FOLLOWING DESCRIBED PERSON(S):**

**Gary Vincent FULLER Jr.**, alias Vincent Brown, alias Anthony Eldridge, alias "Moody", alias "G", alias "G-Ball", alias "Mula", DOB 6/9/1995 of 86 Forester Street Rochester, N.Y.

**Timothy Taran JACKSON Jr.**, alias "T", alias "T-Rock" DOB 4/25/1977 of 189 Birr Street Rochester, N.Y.

**Felicia L. COLLINS**, alias "Keisha Brown", DOB 11/19/1982 of 245 Saratoga Avenue Rochester, N.Y.

**Shawn James MCCLARY,** alias Shawn Brumfield, alias Shaunte MCCLARY, alias Khalid Hassan, alias Michael Brumfield, alias Shawnle MCCLARY DOB 1/10/1976 of 186 Mobile Dr. Greece, N.Y.

**Rickey Jerome GAMBLE,** alias Hood, Budda, Jerome DOB 03/28/81 of 695 Glide Street, Rochester, N.Y.

**Donde Germaine LINDSAY,** alias Michael Maddox, Jermaine DOB 09/27/73 of 135 Fifth Street Up, Rochester, N.Y.

**Carl Junior MCCOY**, alias Carl Hawkins, Shawn Gibson, Carl Simmons, Carl Smith DOB 11/12/67 of 186 Woodbine Ave, Rochester N.Y.

**CITY OF ROCHESTER)**
**COUNTY OF MONROE)   SS**
**STATE OF NEW YORK)**

**INVESTIGATOR THOMAS MINURKA,** being duly sworn, deposes and says:

I am the applicant herein, and a public servant of the kind specified in the Criminal Procedure Law, Section 690.05(1), my title be that of Police Officer.

There is reasonable cause to believe that certain property, hereinafter described, maybe found in the above listed premise(s), vehicle(s), and person(s).

AND

**THAT THE PROPERTY REFERRED TO AND SOUGHT TO BE SEIZED, CONSISTS OF;**

A) **Cocaine and Fentanyl** in violation of sections 220.00 of the New York State Penal Law and any evidence that tends to demonstrate that a drug related offense was committed or that a particular person participated in the commission of such offense, to include but not limited to GPS trackers, written records, books and computer records tending to show sale and trafficking of cocaine/fentanyl and money showing profits from the sale of cocaine and fentanyl, safe deposit box records and keys, records, ledgers, notes or other writings reflecting deposit, withdrawal, investment, custody or location of money, real property, personal property or other financial transactions, records, ledgers notes or other writing reflecting ownership of said property, records reflecting the names, addresses and telephone numbers of persons from whom cocaine/fentanyl is purchased and sold, including but not limited to, address and telephone books, including those contained in cellular telephones or Personal Data Assistants and telephone bills; all records ledgers, notes or other writings reflecting income earned and reported to the Internal Revenue Service or other taxing agencies; indicia of occupancy, residency and/or ownership of the described premises, including but not limited to, utility and telephone bills, cancelled envelopes, keys, deeds and mortgages; photographs and other media that depict individuals involved in cocaine and

fentanyl violations and/or photographs to assist in helping identify drug traffickers and their associates including undeveloped rolls of film and deposable cameras.

B) **Cellular phones** and also to search any seized cellular phones. Specifically, phones believed to belong to trafficker(s) both present and not present to extract information related to the investigation incorporated by reference as set forth below off site, for IMSI, MSN and/or MSID numbers and any other numbers or identifiers associated with the described phones and affixed to them within the battery compartment and also contained inside the case of the phone and accessible by disassembly of the phone and also embedded in the memory of the phone or associated and attached SIM cards or memory and records kept electronically or digitally within the telephone's memory to include any data that tends to identify the user or subscriber of the phone including telephone number, email addresses and I.P. address, a log of recent incoming and outgoing phone calls, a list of contacts or phonebook, SMS/MMS text messages, photos, videos, applications and the contents therein, specifically related to the crimes enumerated in all affidavits, orders, applications, and progress reports since October of 2021, the beginning of the investigation into this Drug Trafficking Organization which are hereby incorporated by reference and are made a part hereof.

C) **Electronic devices used for the purposes of video and/or audio surveillance** to include surveillance cameras, video cameras, and any device to store media, video, pictures, and images from the cameras, to include digital video recorders, computers, laptops, wireless access devices, cellular telephone devices, or any other electronic devices used to store multimedia images, as well as the content of any such devices;

specifically related to the crimes enumerated in all affidavits, orders, applications, and progress reports since October of 2021, the beginning of the investigation into this Drug Trafficking Organization which are hereby incorporated by reference and are made a part hereof.

D) **Indicia of occupancy, residency and/or ownership** of the premises described above, including, but not limited to utility and telephone bills, cancelled envelopes, keys, mortgages, insurance policies for the contents of the residence and homeowner's policies.

E) **Firearms**, in violation of Section(s) 265.00 of the New York State Penal Law, and all ammunition, holsters, bullet magazines (clips), and firearm cleaning materials. Also, any such evidence which tends to demonstrate that a weapons related offense was committed or that a particular person participated in the commission of such offense, to include written records photographs and books tending to show possession of firearms.

F) **Clothing, Footwear, and Duct Tape;** black North Face beanie, black North Face pullover hooded sweatshirt, black North Face pants, black North Face balaclava, Tippmann chest protector, any bullet resistant vests or vests the appear to be bullet resistant, rolls of black duct tape, and black NIKE ACG boots.

G) **Stolen Property;** Cartier Braclet, Versace Watch, Misc. Jewelry inside Jewelry Box, Commes Des Garson shirts (BUSINESS SALE ITEMS), (1) pair of Air Jordan sneakers Retro XL Gratitude (black and white) SIZE 10, (1) pair of Air Jordan sneakers Retro XL University (white and blue) SIZE 10, (2) pairs of Prada sunglasses, (2) pairs Michael Kors sunglasses, (2) black and yellow storage totes

with misc. property, Coach watch- black with multi-color gemstones on the watch face, Gucci ring, silver, size 10 (Euro) engraved with "GG" and bumblebees, Yellow gold necklace- "Beverly Hills" chain in mini hearts linked together, Santa Claus Vape cartridges with Bad Santa stickers, (35) eighth gram packages of marijuana in foil packaging marked with retro Batman logos, (10) THC gummies in foil packaging marked "Koko Nuggz", and (10) THC cereal in glass jars marked "Koko Nuggs."

## THE BASIS OF YOUR APPLICANT'S ASSERTIONS AS TO THE EXISTENCE OF REASONABLE CAUSE IS AS FOLLOWS:

### APPLICANT ASSIGNMENT AND BACKGROUND

Your applicant is a Police Investigator employed by the City of Rochester Police Department, and is presently assigned to the Special Investigations Section, Narcotics Unit. Your affiant has been employed as a Police Officer since August of 2004. During that time, I served in the West Division as a Patrol Officer, the Special Operations Division, Tactical Unit as an officer and investigator, an investigator assigned to Patrol Section Investigations (P.S.I.), an investigator assigned to the Special Investigations Section, Narcotics Unit, and as a member of Special Weapons and Tactics (S.W.A.T.). I have worked in an undercover capacity and purchased narcotics in furtherance of narcotics related investigations. I have attended numerous courses in criminal investigations, and have had the opportunity to conduct, coordinate and or participate in a number of successful investigations involving burglaries, robberies, narcotics, weapons possession, assaults, larcenies and homicides. I have interviewed hundreds of defendants, victims, witnesses and

others who have been involved in such crimes. During these investigations, I have
had the opportunity to be the affiant on numerous search warrants to include a Title
III eavesdropping warrant. These warrants were based on the search for evidence
to substantiate various crimes by searching for illicit drugs, clothing, weapons (to
include firearms and knives), cellular telephones, computers, and numerous other
forms of electronic data collection devices. As a result of this background, I am
familiar with the activities of the criminal element within this community and how
they tend to operate. I am also familiar with the jargon of narcotics and other illicit
drug trafficking and the way narcotics and other illicit drug users and sellers seek to
disguise activity relating to drug trafficking. I have been instructed in the use of, and
practical application of, field testing by senior narcotics investigators. I have had the
opportunity to check the results of my field tests with the Monroe County Crime
Laboratory and can state that I have been correct in 100% of the field tests I have
conducted and verified.

### **INVESTIGATION TO DATE**

1.  **On October 30, 2023**, Title III eavesdropping warrant for **585-202-0005**
    (hereinafter **FULLER-1**) was signed by the Hon. Julie Hahn, Monroe County
    Court Judge. That order, application and affidavit and all extensions, amendments,
    and progress reports are hereby incorporated by reference and are made a part
    hereof.

2.  **On October 30, 2023** at 5:08 PM, communications were intercepted on
    FULLER-1. **UKF** informed **FULLER** there is seventy left and she counted four

hundred. **FULLER** responded it is supposed to be four-fifty (FULLER-1 REF#2).

Your affiant believes **UKF** is providing **FULLER** with money and drug counts at

49 Angle Street. Specifically, seventy dosage units of narcotics and $450.00 in US

currency. At 5:43 PM, your affiant observed **FULLER** pull into the driveway of

49 Angle Street in the 2001 Chevrolet Suburban (NY LDX6110). **FULLER** exited

the driver's seat of the Suburban and walked into the side door of 49 Angle Street.

Your affiant observed **FULLER** speak with a female who is inside of side door

while he is at the location. **FULLER** then left the location in the Suburban and

relocated to his residence of 86 Forester Street where at 5:59 PM, **FULLER** exited

the Suburban and entered the front porch door of 86 Forester Street.

3. **On October 31, 2023**, at 2:43 P.M. Investigators McEntee and Taylor conducted
   surveillance at 427 Emerson Street and observed **JACKSON** at the location
   operating the Ford F-150 (NY KWY1902). Per city tax records, a Timothy
   JACKSON owns 427 Emerson Street.

4. **On October 31, 2023,** Your affiant identified **Shawn James MCCLARY,** alias
   Shawn Brumfield, alias Shaunte MCCLARY, alias Khalid Hassan, alias Michael
   Brumfield, alias Shawnle MCCLARY DOB 1/10/1996 of 186 Mobile Dr. Greece,
   N.Y. (hereinafter "**MCCLARY**") as a source of supply of narcotics for **FULLER**
   and **JACKSON. MCCLARY** was identified by surveillance, NYS DMV records,
   comparing arrest and DMV photographs, as well as City of Rochester Property Tax
   records. Per tax records, **MCCLARY** owns 86/88 Forester Street as well as 121
   Bernard Street. The night prior (October, 30th), there was an intercepted
   communication between **FULLER** and **MCCLARY** (FULLER-1 REF#18) where

MCCLARY asks FULLER if he needed a re-supply and FULLER told him he can

start putting something together. Surveillance was conducted at 10:24 AM,

FULLER, MCCLARY, and JACKSON did meet at 86 Forester Street. FULLER

and JACKSON are already inside when MCCLARY arrived. MCCLARY was

operating a tan 2008 Mazda 6 (NY KXA2169) registered to "Shawnle MCCLARY"

DOB 1/10/1976 of 8005 E River Road Rush, NY. He parked in the driveway and

walked in the front porch door without knocking. At 10:29 PM, MCCLARY

departed in the Mazda followed by FULLER in his 2001 Chevrolet Suburban (NY

LDX6110). Per the GPS tracker installed on FULLER's Suburban as well as

surveillance, FULLER traveled straight to 49 Angle Street to conduct a re-supply

of narcotics.

5.  **On November 1, 2023**, Title III eavesdropping warrants for **585- 664-6577**

(hereinafter **JACKSON-1**) and **716-808-2018** (hereinafter **UKF-1**) were signed by

the Hon. Julie Hahn, Monroe County Court Judge. That order, application and

affidavit and all extensions, amendments, and progress reports are hereby

incorporated by reference and are made a part hereof.

6.  **On November 1, 2023**, communications were intercepted between FULLER and

MCCLARY on FULLER-1. At 1:19 PM, MCCLARY asked FULLER if he's still

in the same area, FULLER told him he is, MCCLARY said he was about to pull up

on him (FULLER-1 REF#157). Surveillance observed MCCLARY's Mazda 6 (NY

KXA2169) arrive on Angle Street and stop near FULLER's Suburban (NY

LDX6110) that was parked in front of 19 Angle Street. FULLER exited the

Suburban and got into the Mazda. MCCLARY pulled forward about thirty feet and

**FULLER** exited the Mazda. **MCCLARY** then left the area. **FULLER** reached inside the driver's side door of the Suburban briefly then walked to the rear of 49 Angle Street via the fence. He met with a female user behind the fence. Additional communications were intercepted between **FULLER** and **MCCLARY** on **FULLER-1** while **FULLER** was in the rear of 49 Angle Street. At 1:35 PM, **MCCLARY** asked **FULLER** to ask "them" about the taste to make sure there wasn't any funny aftertaste. **FULLER** responded he's getting "10's and 11's" right now, but he's going to check on the taste and let him know (FULLER-1 REF#160). **FULLER** then walked from 49 Angle to 69 Angle, walking down the west side of the house. He came out moments later and walked back towards 49 Angle. At 1:39 PM, he went inside 49 Angle Street. At 1:48 PM, another communication was intercepted between **MCCLARY** and **FULLER**. **FULLER** told **MCCLARY** "like fire, fire." **MCCLARY** responded "alright, ok" while giggling (FULLER-1 REF#164). Your affiant believes **MCCLARY** supplied **FULLER** with narcotics and **FULLER** provided the narcotics to users to test out at 49 and 69 Angle Street. Once **FULLER** got the feedback from the users, he notified **MCCLARY** that the narcotics he provided to **FULLER** were getting positive reviews from the users.

7.  **On November 2, 2023**, Inv. Post conducted surveillance in the area of 45 Willmont Street and observed **JACKSON** at 45 Willmont Street. He emerged from the driveway on the west side of the residence where the side entry door is located and walked to his red Ford F-150 (NY KWY1902) to retrieve item(s). While **JACKSON** was at the truck, a female left the driveway in a black SUV. As she left, **JACKSON** waved goodbye to her before returning to the house via the

driveway entrance. The GPS tracker stop reports on the F-150 (NY KWY1902) along with Inv. Post's observations confirm **JACKSON's** home residence is 45 Willmont Street.

8.  **On November 2, 2023**, at 7:27 PM, communications between **FULLER** and **UKF** were intercepted on **FULLER-1** and **UKF-1** (**UKF-1** REF #290). **UKF** informed **FULLER** about a woman who spends hundreds at the house is there, but **UKF** reports she only has eighty bags left. **FULLER** tells **UKF** that he is waiting on someone to bring his shit right now. Surveillance observed a 2008 Hyundai Elantra with (NY KSK 1935), arrive at 86 Forester Street. (NY KSK1935). The Elantra is registered to Shawnle MCCLARY. **MCCLARY** exits the vehicle and meets with **JACKSON** and **FULLER**. At 7:32 PM, **UKF** calls **JACKSON** and says that the woman who just spent $400 is looking for the stuff he had in the rice the other day (**UKF-1** REF# 292). **JACKSON** asks if it was the other shit they had and **UKF** replied that she guesses so. At around 7:35 pm, **FULLER** leaves 86 Forester in the Suburban NY LDX6110). Before driving off, **FULLER** is observed talking with **JACKSON** in the street. **JACKSON** is leaning into the Suburban window. **FULLER** then pulls off. At 7:35 PM, **FULLER** called **UKF** and tells her to try to keep the woman there and that he is on his way (**UKF-1** REF# 301). At 7:45 PM, **UKF** calls **FULLER** and **FULLER** tells her that he is right here (**UKF-1** REF# 306). At 7:46 PM, **FULLER** is observed through surveillance pulling up to 49 Angle Street in the Suburban (NY LDX6110) and walks into 49 Angle Street. Investigators believe **UKF** called **FULLER** to notify him that a customer was trying to purchase more narcotics than she had on hand at 49 Angle Street and

then informed **JACKSON** there was a customer looking for a specific product he had stored in rice during a prior transaction at 49 Angle Street. **FULLER** and **JACKSON** were waiting on **MCCLARY** to deliver a re-supply of narcotics so **FULLER** could bring it over to 49 Angle Street for **UKF** to distribute. Once **FULLER** was re-supplied from **MCCLARY**, he brought the narcotics to 49 Angle Street.

9. **On November 3, 2023**, Title III eavesdropping warrants for **585- 664-6755** (hereinafter **MCCLARY-1**) was signed by the Hon. Julie Hahn, Monroe County Court Judge. That order, application and affidavit and all extensions, amendments, and progress reports are hereby incorporated by reference and are made a part hereof.

10. On **November 3, 2023**, at 8:39 AM, **FULLER** and **UKF** speak on the phone (**FULLER-1** REF# 397). In prior calls **FULLER** and others refer to **UKF** as "Keisha." **FULLER** jokes that she's fired. **UKF** is the seller at 49 Angle Street during the day. Based on prior surveillances, she typically arrives between 9:00 AM and 9:30 AM. **FULLER** agrees to give **UKF** a ride to "work." Per GPS installed on **FULLER's** Suburban (NY LDX6110), he drove to the area of 245 Saratoga Avenue, then back to 49 Angle Street. **FULLER** and **UKF** were observed on surveillance exiting **FULLER's** Suburban and walking into 49 Angle Street. **UKF** had mentioned changing hair colors during a conversation intercepted on **UKF-1**. In prior surveillances, **UKF** had bright reddish hair. During surveillance on November 3, 2023, **UKF** had blue hair.

11. On **November 3, 2023**, communications were intercepted on **JACKSON-1**. **JACKSON** received an incoming call from 585-415-7533 at 1:16 PM (**JACKSON-1** reference# 362). An unknown male asked **JACKSON** to swing through when he gets a chance (**JACKSON-1** REF#362). At 2:47 PM, Investigators McEntee and Taylor observed **JACKSON** leave his residence at 45 Willmont Street in his F-150 (NY KWY1902) and drive directly to 135 Fifth Street. He met with an unknown male black briefly out by the open door of his F-150. The unknown male walked back to 135 Fifth Street and **JACKSON** relocated directly to 86 Forester Street and parked in the driveway. Investigators believe this meet was **JACKSON** supplying narcotics to an unidentified male at 135 Fifth Street.

12. On **November 3, 2023**, I confirmed the identity of the female utilizing **UKF-1** as Felicia L. COLLINS, alias "Keisha" DOB 11/19/1982 of 245 Saratoga Ave Rochester, NY (hereinafter **COLLINS**). **COLLINS** has been using the alias "Keisha." Through surveillance, viewing body worn camera video, analyzing toll records, subscriber information of associates of **Felicia COLLINS**, listening to intercepted communications where **UKF** was referred to as "**Felicia**" as well as comparing multiple photographs of **COLLINS** and **UKF** with surveillance video, investigators are now confident **UKF** is **COLLINS**.

13. On **November 3, 2023**, communications were intercepted between **FULLER** and an unknown male (FULLER-1 REF# 445). The unknown male asked if **FULLER** could do the same thing as last time. **FULLER** asked "the one?" and the male agreed. **FULLER** said "give me a minute, I'll be over there." **FULLER** then

contacted **JACKSON** (JACKSON-1 REF# 410) and asked if **JACKSON** had

anything. **JACKSON** told **FULLER** he has "a little bit of something on him" and

that he is at the property. **JACKSON** did not give the address, however, the GPS

tracker installed on **JACKSON** Ford F-150 (NY KWY1902), showed him at 427

Emerson Street. Per city tax records, this location is owned by a "Timothy

JACKSON." Per surveillance and the GPS tracker installed on **FULLER's**

Suburban (NYLDX6110), **FULLER** left 86 Forester Street and met **JACKSON** at

427 Emerson Street. **JACKSON** exited the side door of 427 Emerson Street and

retrieved item(s) from the passenger side of the F-150 along with **FULLER**. Once

the transaction was complete, **FULLER** left to go deliver the narcotics to the

customer and **JACKSON** returned to 427 Emerson Street. Per the GPS tracker on

**FULLER's** Suburban, he went directly to a location near the dead end of Potter

Street. Per T-Mobile records and RPD databases the customer's phone belonged to

Juan Carlos Rivera of 46 Potter Street. Investigators believe **FULLER** received a

call from Juan Carlos Rivera, who asked **FULLER** for the same amount of

narcotics that **FULLER** had sold him during a prior transaction. **FULLER** did not

have the narcotics requested on hand, so he had to contact **JACKSON** to get it.

**JACKSON** said he had with him and the two met at **JACKSON's** rental property

at 427 Emerson Street. After retrieving the narcotics from **JACKSON**, **FULLER**

delivered it to Juan Carlos Rivera at 46 Potter Street.

14. On **November 4, 2023**, surveillance was conducted at 245 Saratoga Ave,

**COLLINS'** last known address. Based prior surveillances as well as intercepted

communications, **COLLINS'** shift at 49 Angle Street begins at 9:00AM and ends

at 9:00PM. **COLLINS** usually walks to 49 Angle Street, but has been driven there

by both **FULLER** and **JACKSON**. At 9:15 AM, surveillance observed

**COLLINS** leave 245 Saratoga Avenue on foot, stop at the corner store at Dewey

Avenue/ Otis Street, and continue on to 49 Angle Street and go inside to begin her

shift at the drug house.

15. On **November 7, 2023,** at 11:07 AM, surveillance was conducted at 186 Mobile

Dr. in Greece, NY and **MCCLARY's** black Hyundai Elantra (NY KSK1935) was

observed in the driveway. At 11:59 AM, **MCCLARY** exited the front door of 186

Mobile Dr. and returned the garbage bins from the end of the driveway and drove

off in the Elantra. At 12:25 PM, a call was intercepted between **MCCLARY** and

**FULLER** (MCCLARY REF#227). **MCCLARY** asked **FULLER** if he had the

"seven" he owed him. **FULLER** said he did and **MCCLARY** said he was going to

come and get it. I believe **MCCLARY** is referring to a $700.00 debt **FULLER**

owes **MCCLARY** for narcotics supplied to **FULLER** by **MCCLARY**. At 1:12

PM, **MCCLARY** arrived at 86 Forester Street and called **FULLER** to notify him

he was at his house (MCCLARY REF#230). **MCCLARY** then went inside 86

Forester via the front porch door on the east side of the residence. **MCCLARY** left

a short time later in the Elantra.

16. On **November 8, 2023,** I was notified of a call for service at 19 Angle Street.

Officer Elissa Giancursio stated she responded for a call to retrieve property from

the down stairs apartment. There was no answer at the door. While handling the

call, a citizen provided information related to illegal activity occurring on Angle

Street, specifically at 19 and 69 Angle Street. The citizen told Officer Giancursio

that the down apartment tenant at 19 Angle Street is a "Katie Hendrick" and her phone number is 585-465-0752. The citizen stated there is a gun in the basement at 19 Angle Street and "Terrance" aka "Cuz" and "Gary" own the house. Cuz owns a red pick-up truck and is in charge. Cuz and Gary supply boy and hard out of 69 Angle Street and two males named "Zay" and "Rod" are the sellers. Zay and Rod carry guns on their person. They have the side door barricaded at 69 Angle Street with a board wedged against the stairs. The citizen did identify themselves to officers by their full name and date of birth. Their pedigree information was intentionally omitted from this affidavit to protect them from potential retaliation for providing information to officers.

17.  I did corroborate the information provided by the concerned citizen. The Verizon Wireless subscriber for 585-465-0752 is listed as Kathryne HEDRICK. Per RPD databases, Lake Section officers responded to a dispute at 69 Angle Street on 7/15/23 and spoke to Kathryne HEDRICK DOB 06/11/2002 (hereinafter, **HEDRICK**). **HEDRICK** reported a domestic incident with a male involving a bb gun (CR# 23-164064). Numerous communications between **JACKSON** and **HEDRICK** have been intercepted on **JACKSON-1**. On 11/03/2023, **HEDRICK** notified **JACKSON** that the landlord texted her about inspecting the issue with the furnace (**JACKSON-1** REF#360). I believe **HEDRICK** is informing **JACKSON** so he can ensure the sellers at 69 Angle shut down narcotics sales when the landlord is expected on site. On 11/04/2023 at 12:17 PM, communications were intercepted on **JACKSON-1** between **HEDRICK** and **JACKSON** wherein **HEDRICK** complained that G's sister came down from the upstairs apartment and

the two had an argument and **HEDRICK** is done with it and is moving back to the other house (**JACKSON-1** REF#491). Surveillance observed a female from the up apartment go to and from the down apartment surrounding the time of the call from **HEDRICK** to **JACKSON**. I believe **HEDRICK** is informing **JACKSON** she wants to move out of 19 Angle and return to 69 Angle. On 11/06/2023, communications were intercepted on **JACKSON-1** between **HEDRICK** and **JACKSON**. **HEDRICK** calls **JACKSON** babe. **HEDRICK** notified **JACKSON** that the landlord is coming to the house between four and six o'clock (**JACKSON-1** REF#858). I believe **HEDRICK** is once again informing JACKSON so he can ensure the sellers at 69 Angle shut down narcotics sales when the landlord is expected on site. **HEDRICK** calls back and tells him they are fixing the furnace now. She calls **JACKSON** baby (**JACKSON-1** REF#873). On November 7, 2023 at 1:20 PM, communications were intercepted between **HEDRICK** and **JACKSON** and **JACKSON-1**. **HEDRICK** told **JACKSON** she just got done and the counts were different for each bag. **JACKSON** said that's how they came and tells **HEDRICK** he gave her enough so she should have more than enough. **HEDRICK** said she saw there was a little extra. **JACKSON** said just do what it comes out to because he gave her extra to make sure she didn't go under (**JACKSON-1** REF#1075). I believe **JACKSON** supplied **HEDRICK** with narcotics to sell at 69 Angle Street and **HEDRICK** was providing him with the bag counts.

18. **On November 9, 2023,** Investigator Springer attempted an undercover purchase of crack cocaine and fentanyl at 69 Angle Street. The undercover purchase was

electronically monitored by members of the Surveillance and Electronics Support Unit (SESU). Investigator Springer walked to the rear of 69 Angle Street. There was a doorbell sitting on the ledge of the window just out of view. She knocked on the window instead of ringing the doorbell, which raised the suspicions of the male seller. The male asked to see her pipe as proof she's a user and refused to sell to her when she couldn't produce a pipe. The male was not visible from outside the window.

19. **On November 11, 2023**, surveillance was conducted on Angle Street. At 4:35 PM, an unidentified male seller left 69 Angle Street and walked to 49 Angle Street. He was let inside by **COLLINS**. **COLLINS** then left 49 Angle Street on foot with two dogs in tow. She walked directly to 96 Angle Street and went inside via the front porch door. Moments later, she exited with the dogs and walked directly back to 49 Angle Street and went inside. Seconds later, the same unidentified male went back to 69 Angle Street, this time he ran. I believe this was a re-supply of narcotics at 69 Angle Street by **COLLINS** who had to first retrieve a stash of narcotics from 96 Angle Street to facilitate the re-supply at 69 Angle Street.

20. **On November 12, 2023,** communications were intercepted on **UKF-1** between **COLLINS** and **JACKSON**. In sum and substance, **COLLINS** asked permission from **JACKSON** to give a male named "Papi" one and one as payment for finding a phone in the backyard of 49 Angle Street as well as doing chores for them in the backyard. **JACKSON** said he cannot have one and one from there, but to send him to the other spot. **COLLINS** told **JACKSON** she just gave them what she had, but asked **JACKSON** to bring her something since they only have the two left

including the one she gave them. **JACKSON** said he's got one ready. She asked if it was already put together, he said no, but it's ready (**UKF-1** REF# 3225). After ending the call with **JACKSON**, **COLLINS** communicated with a male on 585-635-0381 and instructed him to give Papi one and one (**UKF-1** REF# 3226). Surveillance was conducted and did observe a male leave the area of 49 Angle Street via the cut at 27 Angle Street and walk directly to the rear of 69 Angle Street. Investigators believe **COLLINS** called **JACKSON** to ask permission to give a regular drug customer named Papi one single dosage unit of crack cocaine and one single dosage unit of heroin/fentanyl in return for doing yard work at 49 Angle Street. **JACKSON** permitted the payment of narcotics, but instructed **COLLINS** to send Papi to the drug house at 69 Angle Street instead of 49 Angle Street to get the narcotics.

21.  **On November 13, 2023** at 10:05 AM, communications were intercepted between **FULLER** and **MCCLARY** on both **FULLER-1** and **MCCLARY-1**. **FULLER** asked **MCCLARY** if he had something put together. **MCCLARY** responded in the affirmative (**MCCLARY-1** REF# 574). Investigators believe **FULLER** is requesting a re-supply of narcotics from **MCCLARY**. At 5:29 PM, communications were intercepted between **FULLER** and **MCCLARY** where **FULLER** asked **MCCLARY** to come to "the A" to see him because FULLER has everything for him. **MCCLARY** said he will be there (**FULLER-1** REF#1254). At 5:45 PM, surveillance observed **MCCLARY** arrive at 19 Angle Street in his Elantra (NY KSK1935). **FULLER** got in the front passenger seat for four minutes, exited and **MCCLARY** left the area. I believe this was a re-supply of narcotics

from **MCCLARY** to **FULLER** as well as **FULLER** paying the rest of a 700.00 drug debt owed to **MCCLARY**.

22. **On November 13, 2023,** at 12:20 PM, communications were intercepted between **JACKSON** and **HEDRICK** on **JACKSON-1**. **HEDRICK** informed **JACKSON** that a woman relator was coming at 2:00 o'clock to do a walk through at the house. **JACKSON** said they're out of their minds. They were both annoyed by this. **HEDRICK** told **JACKSON** she was going to call "Zay" and tell him to clean. **JACKSON** said alright (**JACKSON-1** REF#2306). I believe **HEDRICK** is notifying **JACKSON** of this because he needs to ensure the relator does not observe any evidence of drug sales occurring at 69 Angle Street and **HEDRICK** will make sure "Zay" hides the narcotics and paraphernalia.

23. **On November 13, 2023,** at 12:11 PM, communications were intercepted between **JACKSON** and an unknown male on **JACKSON-1**. The unknown male contacted **JACKSON** on **JACKSON-1** using cellular instrument (585)351-9798 and asked where **JACKSON** was, **JACKSON** told him "the Jump Off" and the male said he was going to meet **JACKSON** there in twenty minutes (**JACKSON-1** REF#2303). At the time of the call surveillance observed **JACKSON** at 19 Angle Street where he had arrived operating is Chevy Tahoe (NY HNL1850).

   a. At 12:57 PM, surveillance observed a blue Chevy Tahoe with tan racing stripes arrive at 19 Angle Street (NY LCN7032). The unknown male calls **JACKSON** once again on **JACKSON-1** and informs him that he's outside (**JACKSON-1** REF#2364). Surveillance observed **JACKSON** working in the backyard of 49 Angle Street while the unknown male

remained inside his truck waiting for **JACKSON** to meet with him.

b. At 1:18 PM, **JACKSON** called the unknown male back using **JACKSON-1** and apologized for making him wait. **JACKSON** tells the unknown male he's "down here working."

c. At 1:26 PM, surveillance observed the unknown male circle the block in his truck while **JACKSON** continued to make him wait.

d. At 1:29 PM, surveillance observed **JACKSON** walk back to 19 Angle from 49 Angle and greet the unknown male briefly at the driver's window of the unknown male's truck. **JACKSON** then walked to his truck that was parked in the driveway at 19 Angle Street, go inside the driver's side, then get into the front passenger seat of the unknown male's truck.

e. At 1:31 PM, surveillance observed **JACKSON** exit the truck and walk down the south side of 19 Angle out of view. There is a door that leads inside 19 Angle towards the rear of the house. The unknown male pulled off and left the area towards Chili. Mobile surveillance (Officers Sexstone and Bermudez) attempted to follow the unknown male but lost him in traffic as he traveled west out of the city. At 1:37 PM, they observed the unknown male's Chevy Tahoe (NY LCN7032) parked unoccupied at 218 Privet Way in Chili, NY.

f. Through the use of RPD databases, the assistance of the Monroe Crime Analysis Center (MCAC), as well as surveillance conducted on November 24, 2023, I identified Jason Raphael Moore DOB 09/13/1985 of 218 Privet Way, Chili, NY as the person who communicated with **JACKSON** on

JACKSON-1 using (585)351-9798 and met with him at 19 Angle Street before returning to 218 Privet Way (hereinafter, **J.MOORE**). **J.MOORE** is a convicted felon. He was convicted of Attempted Robbery 2nd on April 8, 2008. Additionally, on February 18, 2021, he was arrested for Criminal Possession of a Controlled Substance 3rd Degree for being in possession of approximately 5 grams of bulk cocaine during a car stop and subsequent DWI arrest in the city of Rochester. The case was satisfied with a guilty plea to a Misdemeanor.

g. I believe **J.MOORE** contacted **JACKSON** to purchase bulk narcotics. **JACKSON** told **J.MOORE** he was at the Jump Off, which meant 19 Angle Street, as the Jump Off is a clothing store located on Lyell Avenue adjacent to 19 Angle Street. I believe **JACKSON** exchanged narcotics for money with **J.MOORE** while inside the front seat of his truck and **J.MOORE** returned to his home at 218 Privet Way with the narcotics.

24. **On November 21, 2023**, Title III eavesdropping warrant for **585-537-8555** (hereinafter **COLLINS-1**) was signed by the Hon. Julie Hahn, Monroe County Court Judge. That order, application and affidavit and all extensions, amendments, and progress reports are hereby incorporated by reference and are made a part hereof.

25. **On November 21, 2023**, communications were intercepted between **JACKSON** and an unknown male drug associate on **JACKSON-1**. At 11:45 AM, the unknown male contacted **JACKSON** using cellular instrument (585)622-6425 and told **JACKSON** he needs one. **JACKSON** said "ok, here I come" (**JACKSON-1**

REF#3840).

    a.  At the time of the call, GPS showed **JACKSON** in the area of the Family Dollar store on Waring Rd. Directly after the call, GPS shows **JACKSON** driving to 121 Bernard Street.

    b.  At 12:18 PM, mobile surveillance (Investigators Kamykowski and McEntee) observed **JACKSON's** Tahoe (NY HNL1850) parked in the front yard of 121 Bernard Street unoccupied.

    c.  At 12:24 PM, they observed **JACKSON** exit the front door of the house and approach a car in the street. The person in the car was not the unknown male drug associate.

    d.  At 12:47 PM, GPS shows **JACKSON** depart 121 Bernard Street and drive to meet the unknown male at Lyell Ave/Plymouth Ave.

    e.  At 12:55 PM, surveillance observed **JACKSON** park at the Sunoco gas station at 98 Lyell Avenue next to a tan Chevy Suburban (NY KLD8008).

    f.  At 1:07 PM, **JACKSON** leaves the parking lot without having met with anyone. The unknown male contacts **JACKSON** on **JACKSON-1** and asked where he is at, the **JACKSON** said he left because the unknown male never came out, the unknown male explained he didn't see **JACKSON**. **JACKSON** said he will turn around and head back (**JACKSON-1** REF#3863). **JACKSON** turns into the Jump Off clothing store parking lot adjacent to Angle Street and parks. He remains stationary inside his truck until 1:30 PM.

    g.  At 1:30 PM, surveillance observed **JACKSON** drive to meet the unknown

male. He parked curbside in front of the Sunoco facing west.

h.  At 1:34 PM, the unknown male exited his Chevy Suburban (NY
    KLD8008) and got in the front passenger seat of JACKSON's Tahoe (NY
    HNL1850).

i.  At 1:35 PM, the male exited **JACKSON's** truck and returned to his truck.
    **JACKSON** then drove to 19 Angle and parked in the driveway.

j.  I believe the unknown male contacted **JACKSON** to arrange a purchase
    of bulk narcotics. **JACKSON** went to 121 Bernard Street to retrieve the
    bulk narcotics and met the unknown male at the Sunoco at 98 Lyell Ave
    where they made the drug transaction inside of **JACKSON's** Tahoe. Per
    public tax records, 121 Bernard Street is owned by **MCCLARY**.

k.  At 9:20 PM, the unknown male contacts **JACKSON** again and tells him
    he needs another one, and complains that the last one only came out to
    "twenty-six." **JACKSON** told the unknown male he is fucking up and
    says he is going to have to let him do it for him (**JACKSON-1**
    REF#3960). I believe **JACKSON** sold the male what was purported to be
    a "31" which is thirty-one grams of bulk narcotics, however, when the
    unknown male weighed it, it only came out to twenty-six grams. The
    unknown male wanted another "31" from **JACKSON**.

l.  At 10:04 PM, surveillance observed **JACKSON** meet the unknown male
    in the parking lot at the Sunoco at 98 Lyell Avenue. The unknown male
    exited his Chevy Suburban and approached the driver's side of
    **JACKSON's** Chevy Tahoe and made an obvious hand to hand transaction

with **JACKSON** through the driver's window. They spoke for a few
minutes and parted ways.

m. The unknown male was later identified by your affiant through DMV
records and surveillance as Ricky GAMBLE, DOB 3/28/1991 of 695
Glide Street, Rochester, NY (hereinafter, **GAMBLE**).

26. **On November, 22, 2023,** at 9:31 AM, **COLLINS** was observed by surveillance at
245 Saratoga Avenue. She exited the rear apartment via the door located towards
the rear of the south side of the dwelling and walked west on Bloss Street. She
stopped at the store at Dewey Ave/ Bloss Street then walked directly to 49 Angle
Street and went inside the south side door at the rear of the house.

a. At 10:25 AM, communications were intercepted between **COLLINS** and
**JACKSON** on **JACKSON-1**. **COLLINS** told **JACKSON** there is a lot of
traffic next door and it looks like there are people doing work on the
house. They are both concerned about the people seeing drug customers
coming and going from 49 Angle Street. **JACKSON** instructed
**COLLINS** to send the drug customers out towards 444 Lyell Avenue so
they avoid being seen by the people next door (**JACKSON-1** REF#4018).
The people mentioned by **COLLINS** to **JACKSON** were observed by
surveillance at 37 Angle Street. Furthermore, I am aware through my
extensive surveillance and prior attempt at an undercover purchase at 49
Angle Street that drug customers routinely approach the rear of 49 Angle
Street by cutting through the yards of the neighboring homes to the south
of 49 Angle Street.

b. At 10:28 AM, Investigator Post conducted an undercover purchase of crack cocaine at the rear window of 49 Angle Street. Investigator Post's interactions were digitally monitored with both video and audio by members of the Surveillance and Electronics Support Unit (SESU). I was also monitoring the audio and video during the undercover purchase, and immediately recognized the female voice communicating with Investigator Post through the window as belonging to **COLLINS**. After providing the suspected crack cocaine to Investigator Post in exchange for official RPD funds, **COLLINS** instructed Investigator Post to leave the yard towards the parking lot of 444 Lyell Avenue to avoid the people next door. Investigator Post followed her instructions. The suspected crack cocaine was field tested by Investigator Springer and did test positive for the presence of cocaine. The crack and copies of buy money was turned into the Property Clerk's Office under CR# 23-274440.

27. On **November 24, 2023**, communications were intercepted on **JACKSON-1** between **JACKSON** and **J.MOORE.** Between November 13, 2023 and November 24, 2023, **J.MOORE** has communicated with **JACKSON** on **JACKSON-1** using cellular instrument (585)351-9798 five times using voice calls and fifty-five times using SMS text messages. Many of the SMS messages were encrypted, masking the content on the intercepted communications, however communications on this date were not encrypted.

a. At 9:46 AM, **J.MOORE** asked **JACKSON** if he had "two turkeys", **JACKSON** laughed and said "you know I do." **J.MOORE** asks

JACKSON where he's at, **JACKSON** tells him he is on the east side now. Per GPS, **JACKSON** was at 45 Willmont Street. **J.MOORE** tells **JACKSON** he has to stop at the bank before they meet, but he has to make sure the bank is open first. The two make plans to meet later in the day (**JACKSON-1** REF#4298).

b. At 11:47 AM, **JACKSON** calls **J.MOORE** to clarify what **J.MOORE** wants. **JACKSON** asks, "I need to clarify something, you want what we talked about right?" **J.MOORE** responds, "Hell yeah." **JACKSON** asks, Finesse, right? Finesse two times? **J.MOORE** responds, yep, yes sir." **JACKSON** says he's going to hit him right back (**JACKSON-1** REF#4317). At the time of this communication, surveillance observed **JACKSON** at 86/88 Forester Street.

c. At 12:32 PM, **JACKSON** sends an SMS text to **J.MOORE** and tells him to meet him at the house (**JACKSON-1** SMS REF4325). **J.MOORE** responds and tells him he's on his way (**JACKSON-1** SMS REF#4327.

d. At 12:55 PM, **JACKSON** exits 19 Angle, goes to the driver's side of his Chevy Tahoe (NY HNL1850) briefly then gets into the front passenger seat of **J.MOORE's** Chevy Tahoe (NY LCN7032) that is parked curbside in front of 19 Angle.

e. At 1:05 PM, **JACKSON** exits **J.MOORE's** truck and the two continue to talk until 1:11 PM. **JACKSON** walks to his truck, crawls inside the driver's side, and **J.MOORE** leaves the area towards Chili. Mobile surveillance (Investigators Kamykowski, McEntee, and Rine) observed

J.MOORE travel to Target, the liquor store, the gas station, and then home to his apartment.

f.   At 2:22 PM, Investigator Rine observed **J.MOORE** park in his parking space and walk inside his apartment at 218 Privet Way in Chili, NY wearing a Nike backpack. I later showed Investigator Rine a 2021 booking photograph of **J.MOORE** and he confirmed that was the person he observed go inside 218 Privet Way.

g.   I believe **J.MOORE** and **JACKSON** discussed **J.MOORE** purchasing an amount of bulk narcotics from **JACKSON** using the coded language "two turkeys" and "two finesse." After meeting **JACKSON** at 19 Angle, **J.MOORE** returned to his apartment at 218 Privet Way in Chili, NY.

28.  **On November 27, 2023**, Communications were intercepted between **JACKSON** and **HEDRICK** on **JACKSON-1**. **HEDRICK** sent an SMS text message to **JACKSON** saying, "my sister said she can do that work that we talked about" (**JACKSON-1** SMS REF#4743). At 1:53 PM, surveillance observed **HEDRICK** exit 19 Angle down and walk to 69 Angle down the driveway out of view. I believe **HEDRICK** recruited a female, possibly her own sister to assist with **JACKSON's** illicit drug activities. The surveillance of **HEDRICK** going from 19 Angle to 69 Angle shows her continued association with the two locations and her on-going involvement in the drug trafficking organization.

29.  **On November 27, 2023** at 12:24 PM, communications were intercepted between **JACKSON** and an unknown male drug associate using cellular instrument (585)967-9918 on **JACKSON-1**. The unknown male asked to meet with

JACKSON. **JACKSON** told him to meet at the clothing store on Bay Street. At 12:41 PM, surveillance observed **JACKSON** leave 45 Willmont Street in his Chevy Tahoe (NY HNL1850). At 12:46 PM, surveillance observed **JACKSON** meet an unknown male operating a black Chevy Tahoe (NY LCK6771) at All City Clothing at 355 Bay Street. They met briefly, went inside the store together, came out several minutes later, met again at **JACKSON's** truck then parted ways. I believe the unknown male contacted **JACKSON** to purchase narcotics, JACKSON went directly from his home at 45 Willmont Street to the clothing store, met with the male and completed the transaction.

30. On **November 29, 2023,** communications were intercepted between **JACKSON** and his source of supply on **JACKSON-1**. The source of supply uses cellular instrument (585)503-8905. **JACKSON** texted the source and asked him how long (**JACKSON-1** SMS REF#5169). The source then called **JACKSON** and told him he was on his way. **JACKSON** told the source he was not rushing him, he just wanted the source to know he was ready (**JACKSON-1** REF#5172). At 2:21 PM, the source called **JACKSON** and told him he was there. **JACKSON** told the source to come in the back door (**JACKSON-1** REF#5173). Surveillance observed **JACKSON**, and **FULLER** were both inside 19 Angle Street at the time. The source arrived in a 2013 Dodge Journey (NY LAK4401) and parked curbside in the street in front of 19 Angle Street behind **FULLER's** suburban. The source was wearing a black hooded sweatshirt and gray pants. He is a male, white, Hispanic in his 30's, he is of average height and build with short black hair and facial hair on his chin. He carried a paper department store style bag and walked down the south

side of 19 Angle towards the rear of the house out of view. At 2:28 PM, the source emerged from the rear of 19 Angle without the bag and returned to his vehicle and left the area. At 2:38 PM, surveillance observed **MCCLARY** arrive at 19 Angle in his Mazda (NY KXA2169) and go inside the front door to the downstairs apartment after being let in by someone. At 3:04 PM, **JACKSON** contacted **COLLINS**. The communications were intercepted on both **COLLINS-1** and **JACKSON-1**. During the call, the voices of **FULLER** and **MCCLARY** can be heard in the background. **FULLER** said "just give me one of them and see what I do with it." **JACKSON** asked **COLLINS** if she was ready for her next set up or was she still working on it? **COLLINS** said she was ready (**JACKSON-1** REF# 5178). I believe this call is about **FULLER** telling **MCCLARY** how if he was given a kilogram of narcotics, he could make a substantial profit and **JACKSON** asked **COLLINS** if she is ready for the resupply of narcotics at 49 Angle Street. **MCCLARY** did exit the down apartment at 4:09 PM and leave in his Mazda. At 4:13 PM, **JACKSON** and **FULLER** exited the front door to the down apartment. **JACKSON** was carrying a backpack and **FULLER** was wearing a puffy coat. **JACKSON** drove off in his Chevy Tahoe (NY HNL1850) and **FULLER** drove off in his Chevy Suburban (NY LDX6110). **JACKSON** went to 49 Angle and was in and out in less than a minute before leaving the area.

31. On **November 29, 2023**, at 5:04 PM, less than one hour after meeting his source of supply at 19 Angle, **JACKSON** did go to his place of employment with the City of Rochester at 51 St. Paul Street. Surveillance cameras inside the building captured **JACKSON** enter through the main doors and make his way to the third

floor of the building. There were large bulges in both **JACKSON's** pants pockets and he had both hands inside his sweatshirt pockets. **JACKSON** visited a classroom area on the third floor that is unmonitored by surveillance cameras until he leaves at 7:17 PM.

32. On **December 1, 2023** at 5:35 PM, communications were intercepted on **COLLINS-1**. An unidentified male using cellular instrument (585)635-0381 called **COLLINS** to give her the drug and cash counts at 69 Angle Street. The male told **COLLINS** he forgot to check the stash at first, but then provides a count of everything he has on hand. He told **COLLINS** he has eighty-one "caps" in "b", then later says eighty-five. The male then tells **COLLINS** to hold on he's confused. He then continues to count drugs and cash out loud to himself. **COLLINS** and the male figure out the male is $14.00 short of what he should have in drug sales based on the count. **COLLINS** tells him he needs to pay closer attention when he's collecting money from the customers and giving them change. **COLLINS** then reminds him how he brought her the incorrect money count the day prior. The male said he was going to bring **COLLINS** the money (**COLLINS-1** REF#936). At 5:49 PM, surveillance observes an unidentified male exit the front porch door of 69 Angle and walk to 49 Angle. He gets let in the south side door. I believe this call is about the male giving **COLLINS** the counts on sales in fentanyl and what he has remaining. The male comes up short on the cash count. He then tells **COLLINS** he's going to bring her the money he has on hand from 69 Angle to 49 Angle.

33. During the week of **December 4, 2023**, your affiant along with Investigator Marsherall CI-4. CI-4 has been proven to be truthful and reliable and their

information has led to past seizures and arrests. CI-4 was searched for contraband and provided official RPD funds and directed to make a controlled purchase of narcotics at 423 Murray Street. CI-4 went directly to 423 Street to complete the controlled purchase and returned immediately thereafter. According to CI-4, they walked to the northernmost rear window of 423 Murray Street. They rang a doorbell that was tied to a string near the window and purchased an amount of crack cocaine from a black male through the window. The substance was field tested by me with positive results. The crack was sealed in evidence bag # A221166 and turned into the Property Clerk's Office as evidence under CR# 23-286519. The same day as this controlled purchase, Elijah Waddell-ADAMS, DOB 2/5/1988 of 656 Jefferson Ave (hereinafter, **ADAMS**) was observed on surveillance operating is 2006 Cadillac CTS sedan, bearing NY JDT3971 arriving at 423 Murray Street. He parked in the street and entered the house via the front door. 421/423 Murray Street is a two-family residence and 421 Murray Street is believed to be vacant at the time of this writing. The front door to 423 Murray Street is the northernmost front door. **ADAMS** does not reside at 423 Murray Street. Per Rochester Gas & Electric records, he is not the utility subscriber there, **ADAMS** is the subscriber at 656 Jefferson Ave. Additionally, RPD databases show documentation of him residing at that location. I believe **ADAMS** is supplying 423 Murray Street with narcotics. **ADAMS** does have felony criminal convictions for both narcotics and illegal gun possession. On February 24, 2011, **ADAMS** was convicted of Criminal Possession of a Controlled Substance 4th

Degree. On February 24, 2011, **ADAMS** was convicted of Criminal Possession of a Weapon in the 2nd Degree.

34. On **December 8, 2023** at 5:32 P.M., communications were intercepted on **FULLER-1** and **JACKSON-1** between **FULLER** and **JACKSON** (FULLER-1 REF#2629). **JACKSON** directed **FULLER** to go upstairs to Amy's apartment (88 Forester) to retrieve narcotics stashed in an area above the refrigerator in the kitchen to then bring to **COLLINS** so she can re-supply the "green house" (69 Angle Street). During the call, **FULLER** can be heard walking out of his apartment (86 Forester) onto the enclosed porch and over to the door to 88 Forester and knocking on the door. Amy answered and let **FULLER** upstairs. **FULLER** located the narcotics and asked **JACKSON** if he wanted him to take both, **JACKSON** said just one. I believe this is bulk narcotics packaged for sale. The conversation transitioned into **JACKSON** being upset about **FULLER** giving money to Amy when **JACKSON** already paid her what she had coming to her. **JACKSON** then called her on his other phone while staying on the line with **FULLER**. **JACKSON** then chastised Amy for accepting money from **FULLER** because they already worked out her payment. I believe **JACKSON** and **FULLER** are compensating Amy to prepare bulk narcotics for individual sale as well as stash narcotics inside her apartment at 88 Forester. 86/88 is a two-family residence owned by **MCCLARY**. I believe Amy is Amarilis DIAZ, DOB 6/16/1992 (hereinafter, **DIAZ**). Per RG&E records, she is the utility subscriber at 88 Forester. I subpoenaed T-Mobile call detail records for **DIAZ's** mobile phone (585)369-9817 and confirmed she communicated with **JACKSON** on his (585)730-2753

line at the time of the intercepted communication on **FULLER-1**. Per Monroe County Jail records, **DIAZ** had visited **JACKSON** in jail fifteen times when he was an inmate there in 2019. Surveillance confirmed **FULLER** was inside 86/88 Forester at the time of the intercepted communication.

35. On **December 9, 2023**, at 9:20 AM, surveillance observed **ADAMS'** Cadillac (NY JDT3971) parked curbside at 656 Jefferson Ave.

36. On **December 9, 2023**, **JACKSON**, **FULLER**, and **COLLINS** coordinated switching the drug sale operation back from 49 to 96 Angle Street and maintaining 49 Angle Street as a stash location.

    a. At 8:34 AM, **FULLER** is observed by surveillance leaving 86/88 Forester operating his white Chevy SUV rental car (NY KAS4457).

    b. At 8:43 PM, **FULLER** arrives at 49 Angle and enters the house.

    c. At 8:59, surveillance observes **JACKSON** leave his residence at 45 Willmont in his Chevy Tahoe (NY HNL1850).

    d. At 9:19 AM, **JACKSON** arrives at 49 Angle.

    e. At 10:20 AM, **FULLER** goes to 96 Angle in his Chevy (NY KAS4457).

    f. At 10:31 AM, surveillance observes **COLLINS** go inside 49 Angle.

    g. At 10:47 AM, **FULLER** walks from 49 to 69 Angle and walks down the west side of the house towards the rear out of view of surveillance.

    h. At 10:50 AM, surveillance observes **FULLER** walk back from 69 to 49 Angle and go inside to meet with **COLLINS** and **JACKSON**.

    i. At 10:59 AM, surveillance observed **JACKSON** leaving 49 Angle in his Tahoe (NY HNL1850) and **FULLER** walks to 19 Angle and goes inside

the downstairs apartment.

j. At 11:05 AM, **FULLER** exited 19 Angle Down and walked back to 49 Angle. FULLER no longer resides at 19 Angle. I believe 19 Angle is being used to stash money and/or contraband.

k. At 12:50 PM, Surveillance observed drug customers of **FULLER, JACKSON,** and **COLLINS** moving items from 49 to 96 Angle.

l. At 1:10 PM, communications were intercepted on **COLLINS-1** and **FULLER-1** between **COLLINS** and **FULLER** (COLLINS-1 REF#2038). **COLLINS** told **FULLER** "Red" and the others who helped move everything from 49 to 96 Angle and set up shop there want to get paid. **FULLER** asked if "Cuzzo" left, **COLLINS** said yes. I believe **FULLER** is referring to **JACKSON** because he wants him to decide what to pay the helpers. **FULLER** told **COLLINS** to ask what he thinks is fair, **COLLINS** said Red asked for "one bag" so **FULLER** told her ok, give him one bag. I believe this means one dosage unit each of crack and/or fentanyl.

m. At 1:41 PM, communications were intercepted between **JACKSON** and **COLLINS** on **COLLINS -1** and **JACKSON- 1** (COLLINS-1 REF# 2047). **JACKSON** is observed by surveillance back in the area of Angle Street. A black male I believe to be Red that they refer to in (COLLINS-1 REF#2038) complains to JACKSON about only being paid one bag for all the work he did. **JACKSON** calls **COLLINS** and is displeased with the amount they were given for all their work and sends the male down to see

COLLINS to give him more drugs as compensation. Surveillance observed a male walk to the rear of 96 Angle.

n. At 2:03 PM, **COLLINS** is observed by surveillance on the porch of 96 Angle.

37. On December 10, 2023 at 1:01 PM, communications were intercepted on **FULLER-1** and **JACKSON-1** (FULLER-1 REF#2902). **FULLER** asked **JACKSON** "where you at with it?" and said he needed to see him now and that it was important. **JACKSON** told **FULLER** he's on Emerson. I believe **FULLER** needs a resupply of narcotics. At 1:20 PM, **JACKSON** is observed by mobile surveillance (Sgt. Lee and PO Abrams) at 427 Emerson Street. JACKSON trips between the house and his Chevy Tahoe (NY HNL1850) that is parked in front. He uses the door on the east side of the home. Per City of Rochester tax records, 427 Emerson is a single family residence owned by a "Timothy JACKSON." This could be **JACKSON** or his father, Timothy Sr. **JACKSON** appears to be doing home improvements inside. This is a rental property owned by the **JACKSONs**. I believe **JACKSON** uses this location as a stash house for cash and/or contraband just like he used his other rentals at 19 and 49 Angle in furtherance of his illegal narcotics sales business.

38. On **December 11, 2023** at 3:19 PM, communications were intercepted on **JACKSON-1** and **FULLER-1** between **JACKSON** and **FULLER** (JACKSON-1 REF#2959). **FULLER** called **JACKSON** to tell him he forgot the "G's" and needed "one for the G's." I believe "G" is short for grams of crack they sell for $30.00 per individual dosage unit and **FULLER** needed bulk unpackaged

narcotics so he can arrange for it to be prepared for sale and brought to 96 Angle Street. **FULLER** told **JACKSON** no rush, but whenever he gets a chance can he put it together. **JACKSON** told **FULLER**, "there's one up there in the same place." **FULLER** then asked if he wanted him to just grab that, **JACKSON** said he might as well. **FULLER** asked **JACKSON** if he gave "Cuzzo" upstairs something to do. **JACKSON** told **FULLER** he "gave it to her last night." **FULLER** told **JACKSON** he is going to check on that. **FULLER** is then heard walking out of his apartment (86 Forester) onto the enclosed porch and over to the door to 88 Forester and knocking on the door. **FULLER** tells **JACKSON** that was it and the call ends. I believe **FULLER** was going to **DIAZ's** apartment (88 Forester) to get bulk narcotics she is stashing for them as well as the packaged narcotics she prepared for them.

39. During the week of **December 11, 2023**, Investigators Taylor and Rine met with CI-7. CI-7 has been proven to be truthful and reliable and their information has led to past seizures and arrests. CI-7 was searched for contraband and provided official RPD funds and directed to make a controlled purchase of narcotics at 423 Murray Street. CI-7 went directly to 423 Street to complete the controlled purchase and returned immediately thereafter. According to CI-7, they walked to the northernmost rear window of 423 Murray Street. They rang a doorbell that was tied to a string near the window and purchased an amount of fentanyl from a black male through the window. The substance was field tested by Inv. Taylor with positive results. The fentanyl was sealed in evidence bag # LP9120176566B and turned into the Property Clerk's Office as evidence under CR# 23-291366.

40. On **December 11, 2023**, at 8:28 AM, surveillance observed **FULLER** arrive at 49 Rockview Terrace in his Chevy rental SUV (NY KAS4457). **FULLER** picked up a male who exited 49 Rockview and left the area. RPD databases and City of Rochester tax records show that 49 Rockview belongs to **FULLER's** grandmother Deborah BRUCE. His uncle Vincent BRUCE also resides at the location.

41. On **December 14, 2023** at 5:46 PM, communications were intercepted between **FULLER** and **JACKSON** on **JACKSON-1** and **FULLER-1** (FULLER-1 REF# 3223). At the time of the intercepted communication, surveillance confirms **FULLER** is inside 86/88 Forester. **JACKSON** directs **FULLER** to go upstairs to 88 Forester to get "B." "B" is short for "Boy" and "Boy" is common slang for heroin/fentanyl. **FULLER** can be heard walking out of his apartment (86 Forester) and onto the enclosed porch and knocking on the door to **DIAZ's** apartment (88 Forester). **JACKSON** tells **FULLER** it's in the same place. I believe he is referring to a hidden location above the refrigerator **JACKSON** described in a previous intercepted communication. **FULLER** is let into the apartment. **JACKSON** explains to **FULLER** in detail how to mix the fentanyl and the cutting agents. **JACKSON** comments how they are going to make money off the "stupid motherfucker." I believe they are talking about Elijah Waddell- ADAMS (hereinafter, **ADAMS**), the low-level dealer that **JACKSON** supplies who in turn supplies at least one drug location known to investigators, 423 Murray Street. **JACKSON** also mentions **ADAMS'** brother is calling him for the same thing. **ADAMS'** brother is Joshua Waddell-ADAMS, also a known/documented drug dealer. **JACKSON** calls **FULLER** back to continue the conversation (JACKSON-

1 REF# 6834). **JACKSON** instructs **FULLER** to "give him four and put one on there" and states **ADAMS** will be breaking it down anyway. I believe **JACKSON** is telling **FULLER** to take four grams of bulk fentanyl and mix it with one gram of a cutting agent to make a total of five grams and that **ADAMS** will be bagging it up on his own into individual dosage units. During this conversation, **JACKSON** complains about having to work at "this stupid ass basketball game." **JACKSON** is employed by the City of Rochester as a member of Pathway's to Peace. His job is supposed to be mentoring troubled youths and mitigating violent disputes within the inner city. GPS on **JACKSON's** phone placed him in the area of Monroe High School at the time of the call. **JACKSON** instructs **FULLER** to bring the fentanyl to **ADAMS** at 423 Murray Street. At 6:16 PM, surveillance observed **FULLER** leave 86/88 Forester in his Chevy rental (NY KAS4457). At 6:28 PM, surveillance observed **FULLER** arrive at 423 Murray and meet with **ADAMS** in the street. **ADAMS** received the fentanyl from **FULLER** and brought it inside 423 Murray. **FULLER** then went to 96 Angle and backed his SUV in the driveway.

42. On **December 15, 2023**, at 9:52 AM, surveillance observed **ADAMS** exit 423 Murray and leave in his Cadillac (NY JDT3971). At 10:10 AM, **ADAMS** arrived at 656 Jefferson Ave and keyed into the apartment door and went inside.

43. On **December 19, 2023** at 1:50 PM, mobile surveillance (Inv. Rine) observed **MCCLARY's** Mazda sedan (NY KXA2169) parked in the driveway at 181 Rossiter Road. He observed **MCCLARY** emerge from the house and place a bag inside the trunk of the car and drive off.

44. On **December 16, 2023** at 11:24 AM, surveillance observed **JACKSON** at 427

Emerson Street in his Chevy Tahoe (NY HNL1850). **JACKSON** left 427 Emerson and drove to Angle Street and went inside 19 Angle (down).

45. On **December 19, 2023** at 3:44 PM, surveillance observed **JACKSON** arrive at 86/88 **Forester** in his Chevy Tahoe (NY HNL1850) and carry a bag into the enclosed porch, bypassing the door to 86 and continuing towards the door to 88, **DIAZ's** apartment.

46. On **December 19, 2023** at 6:03 PM, communications were intercepted between **JACKSON** and **COLLINS** on **JACKSON-1** and **COLLINS-1** (COLLINS-1 REF#4927). In summary, **JACKSON** told **COLLINS** he accidentally swallowed a bag while bagging up bulk narcotics into individual dosage units. He said he got sick and disoriented. He joked to **COLLINS** that he was going to end up hanging out in the tent behind 96 Angle with the rest of the other drug addict customers.

47. On **December 19, 2023**, at 5:30 PM, surveillance observed **FULLER** arrive at 49 Rockview in his Chevy rental (NY KAS4457) and go inside the front door carrying a box.

48. On **December 20, 2023**, communications were intercepted on **JACKSON-1** between **JACKSON** and Leshawn **ROUNDTREE**, alias Esco, DOB 10/26/1979 of 10 Champlain Street, Rochester, NY (hereinafter, **Rountree**) (JACKSON-1 REF#7802). **ROUNDTREE** asked **JACKSON** "where you at with it?" **JACKSON** said he's "fucking with the baby" and it's going to be a minute. "Baby" is a common slang term for a "thirty-one" which is 31 grams of bulk narcotics. I believe **JACKSON** is either inferring that he is packaging a "thirty-one" for sale or visiting an infant relative. I believe **ROUNDTREE** is looking for

a re-supply of narcotics from **JACKSON**. **ROUNDTREE** is a documented drug dealer known to me. **ROUNDTREE** was present in drug sale location during a narcotics search warrant execution I assisted with at 1318 Jay Street on December 8, 2022. **ROUNDTREE** told **JACKSON** he would come to him if he was busy, but **JACKSON** would not disclose his location. **ROUNDTREE** told **JACKSON** "it's not that serious, it's only love." I believe **ROUNDTREE** was telling JACKSON he could trust him. **JACKSON** would not tell him the location and stated he will catch **ROUNDTREE** when he leaves. Surveillance observed **JACKSON** at 121 Bernard Street at the time of the intercepted communication. Per City of Rochester tax records, 121 Bernard is owned by **MCCLARY**. **MCCLARY** does not reside at 121 Bernard, he is the landlord. I believe 121 Bernard is a stash location utilized by **JACKSON** and **MCCLARY**.

49. On December 21, 2023 at 5:24 PM, surveillance observed **MCCLARY** exit the garage of 186 Mobile Dr., Greece, NY and leave in his white Ford Explorer (NY JBH6078). Based documentation in multiple law enforcement databases, daily surveillance, and GPS data from **MCCLARY's** mobile phone and vehicles, 186 Mobile Drive is **MCCLARY's** known residence where he sleeps most nights.

50. On **December 22, 2023**, **FULLER** arranged travel to Atlanta, G.A. to visit family for the holidays. At 4:24 PM, a cellular communication between **FULLER** and **COLLINS** was intercepted on **FULLER-1** (FULLER-1 MMS REF# 55). **FULLER** sent **COLLINS** a picture message of **MCCLARY's** contact information. **MCCLARY's** number was saved in **FULLER's** phone as "S." I believe the reason **FULLER** sent **MCCLARY's** contact to **COLLINS** is because

**MCCLARY** was going to assume **FULLER's** responsibilities with re-supply and money collection on Angle while **FULLER** is away in Atlanta. GPS on **FULLER's** phone did confirm he traveled by car to Atlanta.

51. On **December 25, 2023**, several communications were intercepted on **MCCLARY-1** between **MCCLARY**, **FULLER**, and an unknown person using cellular instrument 585-806-6571 (MCCLARY SMS REF#'s 2835, 2837, 2842, 2844, 2850, 2852, 2854, 2856, 2858, 2874). I believe 585-806-6571 is commonly used by **Anderson**, but has also been used by **PEART**. In summary, **MCCLARY** coordinated with **FULLER** and the unknown male a re-supply of narcotics at 96 Angle and a retrieval of drug proceeds from 49 Angle. At 3:25 PM, surveillance observed **MCCLARY** at 96 Angle in his black Hyundai sedan (NY KSK1935). A black male exited 96 Angle and retrieved item(s) from **MCCLARY** via the front passenger door of the car and ran back inside 96 Angle briefly. The male comes back out and gets in the car with **MCCLARY**. They drive around the block and park in the driveway of 49 Angle. The male goes inside while **MCCLARY** waits in the car. At 3:32 PM, the male exits and **MCCLARY** drops him back off at 96 Angle. **MCCLARY** informs **FULLER** that he left $3,346 at 49 Angle and collected the rest. **MCCLARY** told **FULLER** he needs to "start paying the machine back." I believe he is referring to his drug supplier. **MCCLARY** tells **FULLER** he owes him $5600.

52. On **December 30, 2023** at 12:35 PM, communications were intercepted between **MCCLARY** and **FULLER** on **MCCLARY**-1 and **FULLER**-1 (MCCLARY-1 REF#3161). **FULLER** tells **MCCLARY** they are out, **MCCLARY** says he's on

his way. Surveillance observed **MCCLARY** leave 186 Mobile Dr in his Hyundai (NY KSK1935) at 12:45 PM and drive to 86/88 Forester. **MCCLARY** goes into Forester via the front porch door. **MCCLARY** leaves at 1:08 PM. I believe this was a re-supply of narcotics from **MCCLARY** to **FULLER**.

53.  **During the week of January 1, 2024**, Investigators Steiner and Burgstrom met with CI-8. CI-8 has been proven to be truthful and reliable and their information has led to past seizures and arrests. CI-8 was searched for contraband and provided official RPD funds and directed to make a controlled purchase of narcotics at 423 Murray Street. CI-8 went directly to 423 Street to complete the controlled purchase and returned immediately thereafter. According to CI-8, they walked to the northernmost rear window of 423 Murray Street. They rang a doorbell that was tied to a string near the window and purchased an amount of crack cocaine from an unknown person through the window. The substance was field tested by Inv. Burgstrom with positive results. The crack was sealed in evidence bag # A215363 and turned into the Property Clerk's Office as evidence under CR# 24-003720.

54. **During the week of January 1, 2024**, Investigators Steiner and Burgstrom met with CI-8. CI-8 has been proven to be truthful and reliable and their information has led to past seizures and arrests. CI-8 was searched for contraband and provided official RPD funds and directed to make a controlled purchase of narcotics at 69 Angle Street. CI-8 went directly to 69 Angle Street to complete the controlled purchase but was intercepted by at the rear of the house in the yard by a male Hispanic with long hair. The male told CI-8 they're selling from a different location now. The male walked CI-8 to the rear of 19 Angle where CI-8 purchased an amount of crack cocaine and returned

immediately thereafter. According to CI-8, they walked through a cut at 27 Angle to get to the rear of 19 Angle and purchased the crack from a black male, 18-24 years old from the inside of a shed attached to the rear of the house. The substance was field tested by Inv. Burgstrom with positive results. The crack was sealed in evidence bag # A215363 and turned into the Property Clerk's Office as evidence under CR# 24-003722.

55.        On **January 3, 2024,** at 3:48 P.M., a cellular communication was intercepted pursuant to the Title III eavesdropping warrant between **JACKSON and FULLER on FULLER-1. FULLER JACKSON** was utilizing cellular instrument (585)448-8422 (FULLER-1 REF#5268). **JACKSON** updated **FULLER** on their plan to carry out a kidnapping along with a home invasion robbery of an unknown victim and members of his family. **JACKSON** describes how they will kidnap the victim at one location and carry out a home invasion at his family's residence where they will hold his female significant other and their baby. They will then tell the victim the address where they have custody of her and the baby and specifically threaten to incinerate his baby in the oven if he does not disclose the location of whatever valuables they are after. Once they extract the information, they will locate the valuables and kill the victim. Additionally, **JACKSON** discusses staging guns to be prepared to execute the plan. **JACKSON** describes casing one of the potential locations in question. Based on his description and monitoring **JACKSON's** GPS tracker installed on his Chevy Tahoe (NY HNL1805), he travelled to Halesworth Lane in Webster, NY and circled the street twice. He mentioned specifically during the call making two passes around the neighborhood. He described how all the homes had surveillance systems and if they parked anywhere on the street,

they look suspicious. **FULLER** commented in agreement to **JACKSON's** assessment. The entire communication lasted 26 minutes and 51 seconds.

56.      **On January 3, 2024** between 8:20 PM and 9:05 PM, surveillance observed **JACKSON** shopping at the Dick's Sporting Goods store in Webster located at 1062 Ridge Road. **JACKSON** purchased black North Face pants, black North Face hooded sweatshirt, black North Face balaclava mask, black Tippmann airsoft style tactical vest, and black North Face beanie.

57.  On **January 4, 2024** at 3:14 PM, surveillance observed **MCCLARY** arrive at 181 Rossiter in his Hyundai sedan (NY KSK1935), park in the driveway, check the mailbox and go inside.

58.  On **January 4, 2024** at 1:13 PM, surveillance observed **MCCLARY** arrive at 86/88 Forester in his Subaru (NY LGD7979) and **JACKSON** arrive in his Chevy Tahoe (NY HNL1850) and go inside the enclosed porch door to 86/88 Forester.

59.  On **January 4, 2024** at 3:24 PM, communications were intercepted between **JACKSON** and **MCCOY** on **JACKSON-1** (JACKSON-1 REF#10327). **JACKSON** told **MCCOY** he needed to "switch these phones out" and **MCCOY** needed to procure a black long sleeve shirt.

> a.  At 4:49 PM, mobile surveillance (Inv. Burgstrom) followed **JACKSON** and **MCCOY** into the Walmart at 1490 Hudson Ave. They purchased two TracFones (prepaid cell phones), paying in cash. Video and a receipt of the transaction was obtained from Walmart. I believe **JACKSON** and **MCCOY** are making preparations to do the home invasion robbery and the mention of the black shirt and purchase of the phones are meant to be

used as part of the plan.

    b. After the two left Walmart surveillance observed **MCCOY** drive his BMW (NY KAU7962) to 96 Angle. **MCCOY** went inside 96 Angle. Moments later, he left Angle and drove to his residence at 186 Woodbine Ave.

    c. Mobile surveillance (Sgt. Coniglio) observed **MCCOY** park in the driveway and walk towards the house out of his view.

    d. **MCCOY** is currently supervised by New York State Parole and 186 Woodbine Ave is **MCCOY's** parole approved residence.

    e. Multiple department databases show **MCCOY** residing at 186 Woodbine Ave.

60. On **January 8, 2024** at 10:19 AM, surveillance observed **ADAMS** exit his apartment at 656 Jefferson Ave and leave in his Cadillac (NY JDT3971). He arrived at 423 Murray at 11:47 AM and went inside.

61. On **January 9, 2024**, at 10:31 AM, surveillance observed **JACKSON** exit 45 Willmont Street and leave in his Tahoe (NY HNL1850) that was parked in the street. He drove to 86/88 Forester, parked in the driveway and went inside the front porch door.

62. On **January 9, 2024** at 11:46 AM, surveillance observed **MCCLARY** arrive 86/88 Forester in his Mazda (NY KXA2169) and went inside via the front porch east door. **JACKSON** was present and inside already.

63. On **January 9, 2023** at 1:25 PM, **MCCLARY** arrived at 181 Rossiter in his Subaru (NY LGD7979) and went inside the east door.

64. On **January 9, 2024** at 2:37 PM, **MCCLARY** is observed at 86/88 Forester in his

Subaru (NYLGD7979). He parked in the street and walked in the porch using the west side door and went into 88 Forester.

65. On **January 9, 2024** at 2:28 PM, surveillance observed **JACKSON** arrive at 49 Angle Street in his Tahoe (HNL1850). **JACKSON** goes to the passenger side of the Tahoe. A male exited the cut through north of 19 Angle and meet **JACKSON** at 49 Angle. This is a cut through that is used to access the rear of 19 Angle. The two meet and go inside the south door at 49 Angle.

66. On **January 9, 2024** at 11:45 PM, a home invasion robbery was reported at 1795 Halesworth Ln. in Webster, NY (Webster CR# 2024-00000791). The victims reported two black males armed with handguns wearing all black and one wearing a black airsoft style tactical vest and black and entered through the partially open garage door, pistol whipped the female victim, went inside and took the victims and their young child hostage. The victims recalled one of the suspects was wearing all black Nike ACG boots. The two adult victims' hands, feet, and mouths were duct taped. The suspects then went through the house collecting property to steal from the location. The following items were stolen:

     a.   A white 2023 BMW SUV (NY JPN6099), recovered at 1130 Orchard Rd, Webster.

     b.   Approx. $3,200.00 US currency

     c.   Cartier Braclet

     d.   Versace Watch

     e.   Misc. Jewelry inside Jewelry Box

     f.   Android Smart Phone, recovered in the garage.

    g.  Commes Des Garson shirts (BUSINESS SALE ITEMS)

    h.  (1) pair of Air Jordan sneakers Retro XL Gratitude (black and white) SIZE 10

    i.  (1) pair of Air Jordan sneakers Retro XL University (white and blue) SIZE 10

    j.  (2) pairs of Prada sunglasses

    k.  (2) pairs Michael Kors sunglasses

    l.  (2) black and yellow storage totes with misc. property.

    m.  Coach watch- black with multi-color gemstones on the watch face

    n.  Gucci ring, silver, size 10 (Euro) engraved with "GG" and bumblebees

    o.  Yellow gold necklace- "Beverly Hills" chain in mini hearts linked together

    p.  Santa Claus Vape cartridges with Bad Santa stickers

    q.  (35) eighth gram packages of marijuana in foil packaging marked with retro Batman logos

    r.  (10) THC gummies in foil packaging marked "Koko Nuggz"

    s.  (10) THC cereal in glass jars marked "Koko Nuggs"

67. On **Januray 10, 2024** at 12:08 PM, surveillance observed Vincent BRUCE Jr., DOB 12/17/1977 of 49 Rockview Terrace (hereinafter, **BRUCE**) leave his residence at Rockview and get into **FULLER's** Chevy Suburban (NY LDX6110). **BRUCE** is **FULLER's** uncle. **BRUCE** did sit in the driver's seat of the Suburban in the driveway and eventually left the area.

    a.  At 1:43 PM, BRUCE arrived at 19 Angle in the Suburban and parked in the street. **FULLER** was waiting for **BRUCE** in his Chevy rental (NY

KAS 4457). **BRUCE** got in the driver's seat of **FULLER's** car and they

drove off.

    b.   At 1:57 PM, **BRUCE** and **FULLER** returned to 19 Angle and remained in

the **FULLER's** car for several minutes parked in the street.

    c.   At 2:10 PM, surveillance observed **BRUCE** exit **FULLER's** car and go to

the Suburban. **BRUCE** retrieved a large pink bag and large blue bag from

the rear seats of the Suburban. **JACKSON** was also present in his Chevy

Tahoe (NY HNL1850). **FULLER** inside 19 Angle down. **JACKSON**

walked over to the door to 19 Angle up, but did not go inside. **FULLER**

came out of 19 Angle down, checked the mail for 19 Angle up, and

**FULLER**, **JACKSON**, and **BRUCE** all went inside 19 Angle down.

**BRUCE** carried the bags inside.

68.  On **January 9, 2024** at 3:16 PM, surveillance observed **JACKSON** leave 49 Angle and

then back into the driveway at 96 Angle in the Tahoe (HNL1850).

69.  On **January 10, 2024** at 4:13 PM, communications were intercepted between

**MCCLARY** and **FULLER** on **FULLER-1** and **MCCLARY-1** (MCCLARY-1 REF#

4026). **FULLER** told **MCCLARY** "your gift came in." I believe **FULLER**, **JACKSON**,

and **BRUCE** were involved in the Webster, NY home invasion robbery. I believe

**FULLER** is telling **MCCLARY** he has some of the proceeds from the robbery and plans

to give specific items to **MCCLARY** that they must have previously discussed in person

or on non-intercepted lines.

70.  On **January 10, 2024**, Investigators Hudgins with the Ontario Co. Sheriff's Office

contacted a confidential informant (hereinafter, CI-9) to arrange a controlled purchase at

135 Fifth Street. CI-9 has been proven to be truthful and reliable and their information has been corroborated.

 a. At 3:45 PM, CI-9 contacted a male they know as "Dundee" that lives at 135 Fifth Street, up apartment on cellular instrument (585) 415-7533 and ordered an ounce of crack cocaine. Per C-9, they have known Dundee for over a year and have made numerous purchases of cocaine from him at 135 Fifth Street and Dundee is CI-9's sole Rochester supplier. I know the male associated with (585) 415-7533 to be a drug dealer supplied by **JACKSON** named Donde LINDSAY, DOB 9/27/1973 of 135 Fifth Street, Up (hereinafter, **LINDSAY**).

 b. At 3:46 PM, cellular communications were intercepted between **JACKSON** and **LINDSAY** on **JACKSON-1**. An incoming call came in from **LINDSAY's** line, but was un- answered by **JACKSON** (JACKSON-1 REF# 11163).

 c. At 4:17 PM, **LINDSAY** called **JACKSON** back and this time **JACKSON** answered. **LINDSAY** told **JACKSON** he needed to see him as soon as possible, **JACKSON** said "ok here I come" (**JACKSON-1** REF#11174). I believe **LINDSAY** needed **JACKSON** to bring him narcotics to fulfill the order placed by C-9.

 d. At 4:50 PM, **JACKSON** is observed getting into the Tahoe (NY HNL1850) at 19 Angle and leaving the area after meeting with **MCCLARY** in the street.

 e. At 5:13 PM, the GPS installed on the Tahoe showed him at 135 Fifth

Street. Mobile surveillance (Inv. Rine/McEntee) observed **JACKSON's** Tahoe at the location.

f.  At 5:19 PM, mobile surveillance (Inv. Rine) observed **JACKSON's** Tahoe leave 135 Fifth Street. I believe this was a re-supply of cocaine from **JACKSON** to **LINDSAY**.

g.  At 7:40 PM, Investigators Hudgins and Colburn with the Ontario Co. Sheriff's Office met with CI-9. CI-9 was searched for contraband and provided official OCSO funds and directed to make a controlled purchase of one ounce of crack cocaine from Dundee. In the presence of Investigators Hudgins and Colburn, CI-9 placed a recorded controlled call to Dundee to see if Dundee was ready for CI-9 to come see him. Dundee told CI-9 he needed to "put it together." In another controlled call several minutes later, Dundee told CI-9 he had it on the stove. I believe these calls are about Dundee needing to measure, cut, and cook the powder cocaine he received from **JACKSON** into crack cocaine to prepare for sale to CI-9.

h.  At 8:11 PM, CI-9 was driven directly to 135 Fifth Street by Investigators Hudgins and Colburn to complete the controlled purchase. CI-9's interactions were electronically monitored. CI-9 walked directly to the rear of 135 Fifth Street. A brief conversation between CI-9 and Dundee takes place and CI-9 returns directly to Inv. Hudgins' undercover vehicle and turns over the suspected crack cocaine. According to CI-9, he met Dundee just inside the rear door to the up apartment at 135 Fifth Street and

exchanged $850.00 in official OCSO buy money with CI-9 for the crack cocaine and immediately returned to the investigators and turned over the suspected crack cocaine.

i.  I met with CI-9 after the controlled purchase and showed him a confirmatory photograph of **LINDSAY** and CI-9 confirmed that **LINDSAY** was in fact Dundee, the person he has been buying cocaine from for over a year and the very same person whom he purchased the cocaine from this evening at 135 Fifth Street. He initialed and dated the photograph.

j.  Inv. Hudgins turned the suspected crack cocaine over to me. I photographed and weighed the suspected crack cocaine (29.43 Grams). I field tested the suspected crack cocaine with positive results. The crack was then sealed in evidence bag #A210685 and turned into the Property Clerk as evidence under CR# 24-007078.

71.  On **January 10, 2024** at 10:29 PM, cellular communications were intercepted on **JACKSON-1** between **JACKSON** and an unidentified Hispanic male named "Primo" using cellular instrument (585)503-8905 (JACKSON-1 REF#11210). **JACKSON** called Primo and asked for "two-hundred fifty." I believe **JACKSON** is asking for 250 grams of fentanyl.

72.  On **January 11, 2024** at 12:01 AM, a red Toyota (NY LBG7731) arrived at 19 Angle Street at the same time Primo calls **JACKSON** on **JACKSON-1** and says he is there. **JACKSON** tells him he's in the cut and is about to walk out (JACKSON-1 REF#'s 11214 and 11215).

    a.   At 12:06 AM, surveillance observed JACKSON and Primo meet at 19 Angle. **JACKSON** exits his Chevy Tahoe (NY HNL1850) and walks over to Primo who gets out of the front passenger seat of the red Toyota. **JACKSON** and Primo then walk together out of view towards the rear of 19 Angle. Primo was carrying a box.

    b.   Approx. fifteen minutes later they emerge and Primo walks back to the Toyota with the box. Mobile surveillance (Rine, Lacolla, Taylor, and McEntee) then followed the Toyota back to 25 Kirkland Rd. Surveillance then observed "Primo" getting out of the passenger seat carrying the box and goes into the front door. Two minutes later, he exits 25 Kirkland Road without the box and leaves in the Toyota.

73.  On **January 11, 2024**, Investigators Hudgins with the Ontario Co. Sheriff's Office contacted CI-9 to arrange a controlled purchase at 135 Fifth Street. CI-9 has been proven to be truthful and reliable and their information has been corroborated.

    a.   At 7:46 PM, CI-9 contacted a male they know as "Dundee" that lives at 135 Fifth Street, up apartment on cellular instrument (585) 415-7533 and ordered an ounce of crack cocaine. Per C-9, they have known Dundee for over a year and have made numerous purchases of cocaine from him at 135 Fifth Street and Dundee is CI-9's sole Rochester supplier. I know the male associated with (585) 415-753 to be a drug dealer supplied by **JACKSON** named Donde LINDSAY, DOB 9/27/1973 of 135 Fifth Street, Up (hereinafter, **LINDSAY**).

    b.   At 7:54 PM, cellular communications were intercepted between

**JACKSON** and **LINDSAY** on **JACKSON-1**. An incoming call came in from **LINDSAY's** line, **LINDSAY** told **JACKSON** he needed to see him. **JACKSON** said he was at his job, but was coming (JACKSON-1 REF# 11299). The GPS on **JACKSON's** Tahoe showed **JACKSON** in the area of Monroe High School. As previously mentioned, **JACKSON** is an employee with the City of Rochester Pathway's to Peace and is expected to be at area school at designated times working in that capacity.

c. At 8:04 PM, **JACKSON** sent an SMS text to LINDSAY saying he was there (JACKSON-1 SMS REF# 1077). The GPS installed on the Tahoe showed him at 135 Fifth Street. Mobile surveillance (Inv. Rine) observed **JACKSON's** Tahoe at the location.

d. At 8:25 PM, mobile surveillance (Inv. Rine) observed **JACKSON's** Tahoe leave 135 Fifth Street. I believe this was a re-supply of cocaine from **JACKSON** to **LINDSAY**.

e. At 9:02 PM, Investigators Hudgins and Colburn with the Ontario Co. Sheriff's Office met with CI-9. CI-9 was searched for contraband and provided official RPD funds and directed to make a controlled purchase of one ounce of crack cocaine from **LINDSAY**.

f. At 21:10 PM, CI-9 was driven directly to 135 Fifth Street by Investigators Hudgins and Colburn to complete the controlled purchase. CI-9's interactions were electronically monitored. CI-9 walked directly to the rear of 135 Fifth Street. A brief conversation between CI-9 and **LINDSAY** takes place and CI-9 returns directly to Inv. Hudgins' undercover vehicle

and turns over the suspected crack cocaine. According to CI-9, he met **LINDSAY** just inside the rear door to the up apartment at 135 Fifth Street and exchanged $850.00 in official RPD buy money with CI-9 for the crack cocaine and immediately returned to the investigators and turned over the suspected crack cocaine.

g.   Inv. Hudgins turned the suspected crack cocaine over to me. I photographed and weighed the suspected crack cocaine (29.28 Grams). I field tested the suspected crack cocaine with positive results. The crack was then sealed in evidence bag #A215300 and turned into the Property Clerk as evidence under CR# 24-007078.

74. On **January 17, 2024**, Investigator Chris Marsherall executed the search warrant for 88 Forester Street. During the search Investigator Marsherall was informed by Seneca County Sheriff's Office Lieutenant Mike Strohm, of two bullet resistant vests and rolls of black duct tape that were located in the stairwell to the attic inside of 86 Forester Street.  Investigator Marsherall was familiar with the home invasion robbery from January 9, 2024 in Webster NY. According to members of the Webster Police Department the victims of the robbery reported that the suspects may have been wearing bullet resistant vests. Investigator Marsherall contacted Hon. Julie Hahn, Monroe County Court Judge by phone and requested that the search warrant be amended to include the bullet resistant vests that were located during the search because of the possibility they were bullet resistant vests used by the suspects during the robbery. Hon. Julie Hahn approved the amendment over the phone to include bullet resistant vests and duct tape.

75. Based on extensive surveillances and intercepted communications outlined in this affidavit and in all incorporated references, the individuals and locations involved in this drug trafficking organization keep odd hours and are active day and night.

76. Based upon my training, experience, participation in the executions of search warrants and other illicit drug trafficking investigations and based upon my conversations with other experienced narcotics officers and agents with whom I am associated, I know:

- That drug traffickers very often place assets in names other than their own to avoid detection, seizure, and forfeiture of these assets by government agencies;

- That even though these assets are in other persons names, drug traffickers continue to use these assets and exercise dominion and control over them;

- That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, cashier's checks, correspondence, computer records, and other documents and items related to the manufacture, transportation, ordering, possession, sale and distribution of drugs. These documents and items are often maintained at the suspect's residence;

- That it is common for drug dealers to secret contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence for ready access and to conceal them from law enforcement authorities;

- That drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone

numbers of their current and past associates in the drug trafficking organization. During search warrant executions I have frequently found notes, books, ledgers, and computer files reflecting names, addresses and other personal identifying information of drug associates;

- That drug traffickers take or cause to be taken photographs or video movies of themselves, their co-conspirators, their property and assets purchased with drug proceeds which are normally kept by drug traffickers in their possession and/or in their residence;

- That drug traffickers commonly have in their possession (on their person or at their residence), ammunition, firearms, including but not limited to, handguns, pistols, revolvers, rifles, shotguns, and other weapons. Said firearms are most often used and/or maintained in order to protect and secure a drug trafficker's person and property;

- That drug traffickers usually keep paraphernalia for packaging, diluting, weighing, manufacturing and distributing their drugs. That paraphernalia includes, but is not limited to scales, plastic bags and diluting agents;

- That drug traffickers often attempt to legitimize their profits from the sale of drugs. To accomplish these goals, drug traffickers utilize, for example, foreign banks, domestic banks, and their attendant services, cashier's checks, money drafts, real estate, and real and fictitious businesses;

- That persons involved in drug trafficking often conceal in their residences quantities of drugs, large amounts of currency, financial instruments, precious metals, jewelry, and other artifacts of value which are the proceeds

of drug transactions and evidence of financial transactions, relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities;

- That drug traffickers routinely have methods in place to quickly and efficiently destroy or severely alter contraband to prevent law enforcement from recovering evidence to be used in future court proceedings. I have witnessed occasions where drug traffickers have flushed contraband down toilets, dropped contraband into crock-pots containing hot oil and rinsed contraband down tub drains.

## THE FOREGOING REPRESENTS THE GROUNDS FOR MY BELIEF

1. A request is made that the search warrant authorize the executing police officer(s) to enter the premise to be searched without first knocking and giving notice of their authority and purpose upon the grounds that there is reasonable cause to believe that the property sought to be seized may easily and quickly be destroyed or disposed of, pursuant to Section and Subsection 690.35(4b) of the New York State Criminal Procedure Law. Executing police officers will announce their authority and purpose while breaching and entering the premise. This request is based upon your affiant's training and experience that persons involved in the illicit sale of narcotics and marihuana routinely have methods available for the immediate disposal or destruction of their controlled substances and marihuana in order to prevent their arrest and based upon the specific tactics (described above) employed by these suspects during the course of this investigation.

2. A request is made authorizing the search to be made between anytime night or day and the Court so directs, pursuant to Section 690.35 sub (4a), of the New York State Criminal Procedure Law.

**WHEREFORE, YOUR APPLICANT REQUESTS THAT THE COURT ISSUE A SEARCH WARRANT DIRECTING THE SEARCH AND SEIZURE OF THE FOLLOWING PROPERTY:**

1. **Cocaine and Fentanyl** in violation of sections 220.00 of the New York State Penal Law and any evidence that tends to demonstrate that a drug related offense was committed or that a particular person participated in the commission of such offense, to include but not limited to GPS trackers, written records, books and computer records tending to show sale and trafficking of cocaine/fentanyl and money showing profits from the sale of cocaine and fentanyl, safe deposit box records and keys, records, ledgers, notes or other writings reflecting deposit, withdrawal, investment, custody or location of money, real property, personal property or other financial transactions, records, ledgers notes or other writing reflecting ownership of said property, records reflecting the names, addresses and telephone numbers of persons from whom cocaine/fentanyl is purchased and sold, including but not limited to, address and telephone books, including those contained in cellular telephones or Personal Data Assistants and telephone bills; all records ledgers, notes or other writings reflecting income earned and reported to the Internal Revenue Service or other taxing agencies; indicia of occupancy, residency and/or ownership of the described premises, including but not limited to, utility and telephone bills, cancelled envelopes, keys, deeds and mortgages; photographs and other media that depict individuals involved in cocaine and

fentanyl violations and/or photographs to assist in helping identify drug traffickers and their associates including undeveloped rolls of film and deposable cameras.

2. **Cellular phones** and also to search any seized cellular phones. Specifically, phones believed to belong to trafficker(s) both present and not present to extract information related to the investigation incorporated by reference as set forth below off site, for IMSI, MSN and/or MSID numbers and any other numbers or identifiers associated with the described phones and affixed to them within the battery compartment and also contained inside the case of the phone and accessible by disassembly of the phone and also embedded in the memory of the phone or associated and attached SIM cards or memory and records kept electronically or digitally within the telephone's memory to include any data that tends to identify the user or subscriber of the phone including telephone number, email addresses and I.P. address, a log of recent incoming and outgoing phone calls, a list of contacts or phonebook, SMS/MMS text messages, photos, videos, applications and the contents therein, specifically related to the crimes enumerated in all affidavits, orders, applications, and progress reports since October of 2021, the beginning of the investigation into this Drug Trafficking Organization which are hereby incorporated by reference and are made a part hereof.

3. **Electronic devices used for the purposes of video and/or audio surveillance** to include surveillance cameras, video cameras, and any device to store media, video, pictures, and images from the cameras, to include digital video recorders, computers, laptops, wireless access devices, cellular telephone devices, or any other electronic devices used to store multimedia images, as well as the content of any

such devices specifically related to the crimes enumerated in all affidavits, orders, applications, and progress reports since October of 2021, the beginning of the investigation into this Drug Trafficking Organization which are hereby incorporated by reference and are made a part hereof.

4. **Indicia of occupancy, residency and/or ownership** of the premises described above, including, but not limited to utility and telephone bills, cancelled envelopes, keys, mortgages, insurance policies for the contents of the residence and homeowner's policies.

5. **Firearms**, in violation of Section(s) 265.00 of the New York State Penal Law, and all ammunition, holsters, bullet magazines (clips), and firearm cleaning materials. Also, any such evidence which tends to demonstrate that a weapons related offense was committed or that a particular person participated in the commission of such offense, to include written records photographs and books tending to show possession of firearms.

6. **Clothing, Footwear, and Duct Tape;** black North Face beanie, black North Face pullover hooded sweatshirt, black North Face pants, black North Face balaclava, Tippmann chest protector, any bullet resistant vests or vests the appear to be bullet resistant, rolls of black duct tape, and black NIKE ACG boots.

7. **Stolen Property;** Cartier Braclet, Versace Watch, Misc. Jewelry inside Jewelry Box, Commes Des Garson shirts (BUSINESS SALE ITEMS), (1) pair of Air Jordan sneakers Retro XL Gratitude (black and white) SIZE 10, (1) pair of Air Jordan sneakers Retro XL University (white and blue) SIZE 10, (2) pairs of Prada sunglasses, (2) pairs Michael Kors sunglasses, (2) black and yellow storage totes

with misc. property, Coach watch- black with multi-color gemstones on the watch face, Gucci ring, silver, size 10 (Euro) engraved with "GG" and bumblebees, Yellow gold necklace- "Beverly Hills" chain in mini hearts linked together, Santa Claus Vape cartridges with Bad Santa stickers, (35) eighth gram packages of marijuana in foil packaging marked with retro Batman logos, (10) THC gummies in foil packaging marked "Koko Nuggz", and (10) THC cereal in glass jars marked "Koko Nuggs."

Investigator Thomas Minurka #1791

**Sworn to before me this** _____7th_____

**Day of February, 2024**

_____ **Monroe County Court Judge**